TROYER v. BANK OF DEQUEEN.

Opinion delivered March 15, 1926.

1. MORTGAGES—PRIORITY OF LIEN.—Where notes secured by mortgage were transferred by the mortgagee as collateral security for a loan, and the mortgagee subsequently by writing assigned to another his interest in the notes previously transferred, the assignee's interest in the notes and mortgage was subordinate to the prior lien of the original transferee.

2. SUBROGATION—INTERVENING LIEN—INTENTION OF PARTIES.—Where notes secured by a mortgage were transferred by the holder as collateral security for a loan, and a decree of foreclosure in favor of such holder was subsequently entered, whereupon a third party discharged the indebtedness to the holder, relying upon personal security for reimbursement and without intending to keep alive the lien of such mortgage, and took a second mortgage on the land as additional security, such third party was not entitled, by subrogation, to priority over an intervening lien of which it had constructive notice by the filing of a *lis pendens* notice.

Appeal from Sevier Chancery Court; *C. E. Johnson*, Chancellor; reversed.

*Abe Collins*, for appellant.

*Lake, Lake & Carlton*, for appellee.

McCULLOCH, C. J. G. W. Fensler conveyed 217 acres of land in Sevier County, Arkansas, to C. W. and Clara R. Cameron, and took from them notes aggregating $5,500 and a mortgage on the lands to secure the same. Fensler borrowed $1,800 from Mr. Henry Moore, and transferred to him the Cameron notes as collateral security. Thereafter, Fensler executed to appellant an instrument in writing conveying to appellant his interest in the notes held by Mr. Moore as collateral. The Camerons failed to pay anything on the notes, and Mr. Moore and appellant joined in an action in the chancery court of Sevier County to foreclose their mortgage. The Camerons filed an answer in the suit, pleading for recoupment by way of abatement for the purchase price on account of alleged fraudulent misrepresentations made by Fensler concerning the character and value of the lands conveyed, and on the hearing of the cause the court found that

Moore was an innocent purchaser, and rendered a decree in his favor against the Camerons for the recovery of his debt and enforcement of the mortgage lien against the land. But the court found that appellant was not an innocent purchaser, and allowed damages to the Camerons in an amount sufficient to extinguish the balance of the debt over and above the claim of Moore. Appellant prosecuted an appeal to this court from the adverse decree, which was reversed by this court (160 Ark. 421), and the cause was remanded with directions to the chancery court to enter a decree in favor of appellant for the sum of $604.48, and to foreclose the mortgage for that amount in favor of appellant, in addition to the prior foreclosure in favor of Moore.

There was no appeal by the Camerons from the decree in favor of Moore, and the commissioner of the court proceeded to advertise the lands for sale to pay Moore's debt, in accordance with the decree. Immediately before the time for the sale in accordance with the advertisement made by the commissioner, the Camerons borrowed from appellee, Bank of DeQueen, the sum of $1,725, to use in paying off the debt to Moore. Appellee made the loan as requested, and took a note from the Camerons, signed by J. S. Lake and E. C. Lake as sureties, and the Camerons executed a mortgage on the land to secure the note. The money thus borrowed was used in paying off the Moore debt, and the decree in the latter's favor was marked satisfied without sale of the lands. This was on October 16, 1922, and on December 14, 1923, the mandate of this court reversing the decree in appellant's case against the Camerons was filed in the chancery court, and a decree was entered by that court in accordance with the directions of this court in favor of appellant for the sum of $604.48, and the commissioner was directed to sell the lands in accordance with the decree to satisfy the debt. The commissioner sold the land on March 15, 1924, after due advertisement, and appellant became the purchaser for the sum of $800.

When the commissioner's report of sale was filed, appellee, Bank of DeQueen, appeared and filed an intervention, asking that it be subrogated to the lien of the Moore debt by reason of the fact that the money loaned to the Camerons was used in discharging that debt. Appellant filed an answer to the intervention complaint, denying the right of appellee to subrogation. The issues were tried by the court, and a final decree was rendered in appellee's favor declaring the latter's right to subrogation. The court also confirmed the sale to appellant, and the latter has prosecuted this appeal from the decree in favor of appellee.

It may be said in the beginning of the discussion that the Moore debt constituted a superior lien to that of appellant's for the reason that all of the Cameron notes were transferred to Moore as security for his debt, and the subsequent assignment to appellant was necessarily subordinate to Moore's lien. The case is not one where different notes secured by the same instrument were separately assigned to different persons, as in *Penzel* v. *Brookmire*, 51 Ark. 105, and cases following, but it is one where the whole of the secured debt was transferred successively to different persons, the first assignment in point of time being superior. It follows therefore that, if appellee is entitled to subrogation, its rights are superior to those of appellant as junior lienor.

According to the undisputed facts, there was no intention manifested on the part of appellee and the Camerons, in applying the money borrowed from appellee, to keep alive the Moore debt so as to bring the case within the rule of subrogation laid down by this court in *Rodman* v. *Sanders*, 44 Ark. 504. On the contrary, it is made clear in the proof that there was an absolute payment in discharge of the Moore lien and a satisfaction of the decree. This much is conceded by counsel for appellee, but the right of subrogation is claimed, notwithstanding the absence of such an intention, on the ground that appellee furnished the money to discharge the Moore lien, and

took the security on the land under the belief that it was obtaining a superior lien. Counsel seek, in other words, to bring the case within the rule announced by this court in *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.*, 108 Ark. 555, and similar cases decided later by this court. There are, we think, two important distinctions between the facts of the present case and the facts in the case just cited, on which appellee relies. In that case, as in this, the right of subrogation was claimed on the ground that money had been loaned and used in discharging a prior mortgage lien, and new security was taken under the belief, and without fault, that the new security constituted a superior lien, but in that case the facts were established beyond dispute that the money was advanced in reliance upon the fact that a superior lien was to be secured on the property, and that there was freedom from negligence in failing to discover the intervening lien. In the opinion of the court it was said: "It is undisputed that both the mortgagor, Martin, and the mortgagee, appellants, understood, when the mortgage was executed, that the debt secured by the two prior mortgages was to be paid with the money advanced on this mortgage, and that it would be a first lien against the property for the money so advanced." And in another place the court said: "Here the parties expressly agreed that the appellant, mortgagor, was to have a first lien upon the premises, and while it is true they thought that the record of its mortgage and the payment of the debt secured by the two prior mortgages and their release would effectuate that purpose, it failed to do so, because of the lien of the judgment of appellee intervening, of which appellant was ignorant and should not be charged with negligence in failing to discover it, since an examination of the index to the record of judgments would not have disclosed it." On the contrary, the evidence in the present case fails to establish that there was a reliance upon obtaining a superior lien on the lands, and there was fault upon the part of appellee in failing to discover the intervening

claim of appellant. We quote from the record the testimony of appellee's representative who made the loan:

"Q. Did you know that Henry Moore or the estate of Henry Moore, deceased, had any unsatisfied lien of any kind against this land? A. No, he said his land was about to be sold, and he wanted to borrow some money to save it. Q. Did you loan the money on the faith of Henry Moore's lien, or on your mortgage lien and E. C. Lake and J. S. Lake? A. On the mortgage and security; I didn't know the details. Q. You mean you loaned the money on the mortgage you took on the land and on the personal security of E. C. Lake and J. S. Lake? A. Yes. Q. You were not relying on the fact that Henry Moore had a lien against the land for security of the note? A. No, I didn't know anything about Henry Moore's interest in it. Q. Did you examine the *lis pendens* record or other records to determine whether there were any other liens or claims against the land? A. No. Q. The loan was not made with any intention of keeping alive Henry Moore's judgment for your protection, and you were not depending on it? A. We were depending on Mr. Lake in regard to that, and when it came to the title or anything like that we expected him, being on the note, to look after it."

It will be noticed from this statement of the witness that the reliance was entirely upon the sureties on the note, not only on their financial ability, but upon their knowledge and opportunity for ascertaining the condition of the title to the lands. It is true that the witness stated in general terms that he relied on the mortgage and the personal security, but his further statement shows unequivocally that he was depending entirely upon Mr. Lake, who is shown by other testimony to have been the attorney for the Camerons in the present litigation, and who, of course, was fully advised as to appellant's claim. The testimony shows that, while appellee expected to take a mortgage from the Camerons and did so, it was depending entirely upon the personal security—depending

on Mr. Lake doing whatever was necessary to protect it. It is also manifest that appellee was not without fault in failing to discover the claim of appellant. At the beginning of the suit appellant filed a *lis pendens* in accordance with the statute, which constituted constructive notice to everybody. At the time of this transaction between the Camerons and appellee, there had been a final decree rendered against appellant, but an appeal had been entered and was subsequently perfected. The *lis pendens,* of course, continued as constructive notice until the end of the litigation, and it was the duty of persons dealing with the Camerons to take notice of appellant's claim.

The doctrine of equitable subrogation is a very broad one, and is designed to meet all the demands of natural justice, where there is no forbidding rule of law, but, in order to obtain that relief, the party asking it must be free from fault or carelessness. Equity will not give aid to one whose predicament is brought about by his own fault, and the fact that the situation of the other party is not less favorable after allowance of the right of subrogation than it was before the payment of the debt does not change the rule that the party seeking subrogation must be without fault.

For these reasons we conclude that the right of subrogation is not established, and that the chancery court erred in its decree, which is reversed and remanded, with directions to enter a decree dismissing the complaint of appellee for want of equity.