CITY OF EUREKA SPRINGS *v.* BANKS.

4-7142                                           174 S. W. 2d 947

Opinion delivered November 8, 1943.

*C. A. Fuller,* for appellant.
*Festus O. Butt,* for appellee.

McFADDIN, J.. This appeal involves a municipal improvement district. R. H. Huntington was the owner of a certain lot, with a three-story building thereon, located in Paving District No. 1 in the city of Eureka Springs, Arkansas, which is a city operating under the commission form of government with the mayor and city commissioners likewise the commissioners of each improvement district. Paving District No. 1 was organized in 1929 under the general statute for municipal improvement districts, and issued bonds in excess of $200,000, with maturities to 1954, and with $69,000 unpaid at the time of the trial of this case in the chancery court. The benefits assessed against the Huntington property were $2,000. The assessments were unpaid from 1937 to 1942, inclusive, and the delinquencies for the six years amounted to a total of $214, exclusive of interest and penalty.

On December 4, 1942, Huntington sold his three-story building (but not the lot) to F. H. Banks, who began to raze and remove the building from the lot. On December 8, the city of Eureka Springs, by its mayor and chief of police, served a notice on Banks forbidding him razing and removing the building. The asserted authority for this notice was that Paving District No. 1 had a lien against the lot and building thereon for the delinquent assessments. On the same day Banks filed his complaint in the chancery court against the city, the mayor and the chief of police, alleging purchase of the building from Huntington, the attempted razing and removing and the notice of which Banks said: ''A notice and an order commanding him forthwith to cease and refrain from further razing of the said structure, under a pretense or claim that a certain improvement district in said city, or certain improvement districts therein had a claim or lien on and against the said real estate for certain claimed delinquent assessments for improvement, in the sum of $194; and notifying plaintiff further that unless and until the said sum so claimed was paid, said city would not permit plaintiff further to proceed with the said razing.''

The complaint prayed an injunction, which was granted on December 9, when Banks made bond for $200, with appellees, R. H. Huntington, J. K. Butt and F. O. Butt, as sureties thereon, and the bond was conditioned as follows: "If upon final hearing therein it be declared that the said assessments or any of them be valid and legal and enforceable against the said personalty and structure on said realty, then we bind ourselves, jointly and severally to pay and discharge the said assessments, or so much thereof as shall be validated by such order and found legal and enforceable as against said structure and personalty, or said structure or personalty therein, in the sum of two hundred dollars or so much thereof as shall be necessary."

Banks then proceeded, in seventeen days, to remove the building from Eureka Springs; and on December 12, 1942, an answer and cross-complaint were filed in the cause. The answer set up Ordinance No. 679 of the city (forbidding removal of buildings); denied Banks' right to remove the building from the lot when the improvement assessments were delinquent; and alleged that the lot, with the building removed, would not sell for sufficient to pay the delinquent assessments. The answer also embraced a cross-complaint, which said: "Further answering by way of cross-complaint, the city commissioners of Eureka Springs, acting as commissioners of Paving District No. 1 of Eureka Springs, Arkansas, move that R. H. Huntington, F. O. Butt and John K. Butt, the former being the owner and all three being bondsmen herein, be made parties defendants in this action."

After alleging the delinquencies against the lot involved from 1937 to 1942 as $214 principal, $19.20 penalty, and $32.87 interest, the cross-complaint contained the allegation: "That the value of the lot is not sufficient to pay the entire amount due said paving district and the costs of this action and that the defendants herein should be held on their bond for the same."

A general demurrer and a general denial were filed by Banks and the three sureties; and the cause was heard before a special chancellor on an agreed record, substan-

tially as above set forth, and with other facts which we will mention. Decree was entered: (1) making the temporary injunction permanent; (2) declaring the municipal ordinance No. 679 to be void; (3) foreclosing the improvement district assessment lien for the delinquencies of $214 and for $32.87 interest, and adjudging the same a lien on the vacant lot only, and ordering the vacant lot sold; (4) adjudging that there was no lien on the building; and (5) releasing the bond and the three sureties from all liability. Both sides have appealed.

## Opinion.

I. *Validity of the Assessment.* In the original complaint Banks made a plea of limitations against the delinquent assessments; but it is clear that the assessments were not barred by limitations. See *Martin* v. *Board*, 190 Ark. 747, 81 S. W. 2d 414.

II. *Extent of the Lien of the Assessment.* Section 7285 of Pope's Digest is the concluding sentence of § 4 of Act 84 of the Acts of 1881, which (according to § 35 of Sloan on Improvement Districts) was the basic statute in Arkansas on municipal improvement districts. This act of 1881 is entitled: "An Act to regulate the manner of assessing real property for local improvements in cities of the first class." In § 4 of this act appears the sentence that is now § 7285 of Pope's Digest, which provides: "The words 'real property,' whenever used in this act, shall have the same meaning and significance as are attached to said words in the act providing for the collection of state, county and city revenue." So we look to the law in effect in 1881 providing for the collection of state, county and city revenue to see what meaning and significance the words "real property" possessed in that act. The revenue law in effect in 1881 is found in Chapter 116 of Gantts' Digest of 1874 (with amendments from 1874 to 1881, which do not change the point here); and the first section of Chapter 116 of Gantts' Digest is § 5047, which reads: "The terms 'real property' and 'land' wherever used in this act shall be held to mean and include not only the land itself, whether

laid out in town lots or otherwise, with all things contained therein, but also all buildings, structures, and improvements, and other fixtures, of whatever kind, thereon, with all rights and privileges belonging or anywise appertaining thereto." This definition was from the act of 1873, and the earlier acts (No. 68 of 1868 and No. 35 of 1871); and this definition was carried in almost the same words in Act 104 of 1883 and is now § 13358 of Pope's Digest. So, the definition of real property in effect when Act 84 of 1881 was passed is still the same definition; and the words "real property" in the municipal improvement district law (§ 7285, Pope's Digest) mean not only the lot, but also all the buildings, structures, improvements and other fixtures thereon.

Section 7306 of Pope's Digest provides that the assessment "shall be a charge and a lien against all the real property in said district from the date of said ordinance . . . and shall continue until . . . paid." Thus, since the assessment was a lien on the real property until paid, and since real property included the buildings thereon, it follows that Paving District No. 1 of Eureka Springs had a lien on the building, certainly as long as it remained on the lot. Some authorities say that the lien would continue as long as the building could be identified, but we do not have to decide that question here. Also there is some contention that the building could not be removed—so as to commit waste—as long as any part of the assessment (whether delinquent or not yet due) remained unpaid, but it is not necessary for us to consider that question here. The extent of our holding here is that, Paving District No. 1 of Eureka Springs had a lien on the building which was on the lot when Banks filed his injunction suit and secured the .order that allowed him to raze and remove the building free of molestation.

III. *Enforcement of the District's Rights.* In the case at bar we have a situation where, by the agreed statement, the assessed benefits against the lot and building were $2,000 in 1929; and where the payments from 1929 to 1936 have apparently been made at twenty mills

per year—totalling $320; and where the payments from 1937 to 1942 are delinquent in the amount of $214; and where it is undisputed that the lot denuded of its building is worth only $200. These facts lead to the inevitable conclusion that the removal of the building from the lot did not leave sufficient security to pay the past due assessments of $214. When Banks began to remove the building, the mayor of Eureka Springs, acting for the improvement district of which he was one of the commissioners, served a notice on Banks forbidding him to raze and remove the building. The improvement district could have gone into a court of equity and enjoined Banks from removing the building under the facts heretofore recited, because the removal of the building constituted waste.

In *Little Red River Levee District No. 2* v. *Thomas*, 154 Ark. 328, 242 S. W. 552, certain land in the levee district had been sold for unpaid assessments and purchased by the district, but the purchaser was not entitled to possession until the expiration of the period of redemption. Thomas, without permission of the levee district, was cutting and moving the timber from the land and thereby committing waste. The levee district sought an injunction, which this court ordered granted, saying: ". . . in the present case the defendant might cut and remove all the timber from the lands, and leave the state or become insolvent during the period of redemption given the owner . . . but in the meantime the defendant would have denuded the lands of the timber and the plaintiff would have no redress at law. The complaint shows that the chief value to the lands is the growing timber on it. Therefore, the remedy of the plaintiff at law would be inadequate and incomplete, and the loss would be irreparable." The same equitable principle applies here. The removal of the building constituted an irreparable damage and amounted to waste.

The Supreme Court of Montana, in the case of *State of Montana* v. *District Court*, 101 Mont. 176, 53 Pac. 2d 107, 103 A. L. R. 376, had before it a case where a county had a tax lien on a house and lot, and the owner was

about to remove the house, leaving the lot worth less than the amount of the tax lien. In holding that the county could enjoin the removal of the building under those facts, the court, after holding that the lien for unpaid taxes extended to the house, said: "Indeed, it is declared, without qualification or the noting of either an exception or conflict in the decisions, that: 'Where taxes against real estate are past due and unpaid, the county by which the taxes have been levied may maintain a suit to restrain waste by acts that will reduce the value of the property to an amount insufficient to pay the taxes.' 27 R. C. L., p. 1040, citing only *Lancaster County* v. *Fitzgerald,* 74 Neb. 433, 104 N. W. 875, 13 Ann. Cas. 88, and note." The Montana court cited our own case of *Little Red River Levee District No. 2* v. *Thomas, supra,* as one of the cases recognizing and applying the equitable principles embraced in the quotation above.

In 103 A. L. R. 384, there is an annotation on: "Right of holder of tax or other lien on real property, other than mortgage, to restrain waste"; and cases are there discussed from which we deduce the statement that where taxes (assessments here) are past due and unpaid and liens on the property, the taxing agency (district here) may maintain a suit to restrain waste by acts that will reduce the value of the property to an amount insufficient to pay the past due assessments.

IV. *He Who Seeks Equity Must Do Equity.* When Banks filed his suit enjoining the city of Eureka Springs and its mayor from preventing him from razing and removing the building from the lot, he thereby anticipated and forestalled any injunction suit that Paving District No. 1 could have filed against him to prevent the removal of the building. He thus sought and secured the aid of a court of equity; and under the maxim above quoted, he must do equity. He made a bond for $200, conditioned as heretofore set out, and he and his sureties are liable to the full amount of the bond for the building removed. It is unfortunate for the paving district that the bond was not for a larger amount, but the sureties are only liable for $200. Banks is liable for the full amount of the delin-

quent assessments and interest existing at the time of the filing of his suit.

V. *Municipal Ordinance is Immaterial.* When Banks filed his injunction suit, he said nothing about a municipal ordinance. It was not until the city of Eureka Springs answered, and the cross-complaint was filed, that Ordinance No. 768 of Eureka Springs first entered this case. The validity of that ordinance is immaterial to the decision here, and we forego any discussion of it.

VI. *The Right to Foreclose.* In their cross-appeal, appellees challenge the power of the chancery court to foreclose the unpaid assessments due the district, contending that Joe Morris, mayor of Eureka Springs, was only one commissioner, and could not act for the entire board of commissioners of Paving District No. 1 in seeking judgment of foreclosure. In making this contention, the appellees have apparently overlooked the language of the cross-complaint, as copied hereinbefore, in which the commissioners of the paving district became parties to the cause. The suit for foreclosure of delinquent assessments was prosecuted by proper parties (*Beloate* v. *Street Improvement Dist. No. 2*, 203 Ark. 899, 159 S. W. 2d 451). Further, the court could properly adjudge interest and attorney's fee, since the assessments remained delinquent at the time of the decree. Act 207 of 1937; *Board of Com'rs.* v. *Delinquent Lands,* 195 Ark. 681, 113 S. W. 2d 730; *Ingram* v. *Board of Com'rs.,* 197 Ark. 404, 123 S. W. 2d 1074.

It follows that the decree of the chancery court is reversed and the cause remanded with directions to enter a decree:

(1) Dissolving the injunction;

(2) Rendering joint and several judgment against Banks and the sureties on his bond for $200 to be credited on the delinquent improvement district assessments of $214 and $32.87, interest;

(3) Foreclosing the improvement district lien for the balance of the unpaid assessments and interest and attorney's fee, as decreed, less the credit of $200 as aforesaid, and ordering a sale.

All costs in the lower court and this court up to the entry of the decree herein directed are to be assessed against F. H. Banks. Costs after the entry of the directed decree will be a lien on the lot.

SMITH and McHANEY, JJ., dissent.