LUEKEN *v.* BURCH.

4-8741                                    219 S. W. 2d 235

Opinion delivered March 21, 1949.

*A. M. Coates,* for appellant.

*Dinning & Dinning,* for appellee.

ROBINS, J.   Appellant J. J. Lueken is the owner of two lots in the City of Helena, on each of which there is a residence.   He rents one of these and resides in the other.   For some years he quit paying the taxes, general or special, on these lots.   One of them sold to the State for the nonpayment of general taxes.   The lots were in three improvement districts, each of which had foreclosed its liens for the nonpayment of the assessments of benefits due it.   One of these improvement districts was Street Improvement District No. 16, which had not only foreclosed its lien but had received a deed from the commissioner appointed in the foreclosure suit to sell the lands.

R. L. Brooks was the secretary and treasurer of District No. 16 and was endeavoring to collect delinquent assessments to pay the District's bonded indebtedness, and to wind up its affairs, which he has successfully done. He undertook to aid said appellant in securing a loan, and application therefor was made to a loan association which required a redemption from the various tax sales. It was thought that approximately $3,000 would be required for this purpose, but the loan association declined to make a loan in excess of $2,500, and it became necessary to raise $600 additional to discharge the tax liens and certain incidental expenses.

This plan was devised: Appellant Lueken executed to the Street Improvement District three notes totaling $600, and by way of security executed a deed of trust covering the lots in question, to appellee Dinning as trus-

tee for the Improvement District. The $600 was furnished by appellee Mrs. Burch, who is the daughter of appellee Dinning, and the notes and deed of trust were assigned to her. The loan association made the loan of $2,500, and, with this money and the $600 which Mrs. Burch advanced, the liens were discharged and the Street Improvement District executed a quitclaim deed to appellant Lueken. Appellee Dinning was the attorney for the Street Improvement District, and was interested in assisting Brooks raise the money to pay the District's bonds and existing indebtedness.

The three notes which appellant executed to the Street Improvement District matured respectively, May 5, 1942, May 5, 1943, and May 5, 1944. Appellee Dinning representing his daughter, was over-indulgent to appellants and made no demand for the payment of these notes or the interest thereon until a few days before July 10, 1947, on which date this suit was filed. Said appellee demanded a token payment, which appellants declined to make, and the suit to foreclose was filed. Dinning explains his delay by saying that he knew appellant Lueken was hard pressed for money, and that he was making payments to the loan association regularly to discharge the mortgage to the loan association which was a lien prior to the one his daughter had purchased. An answer to the suit brought by Dinning and his daughter was filed, in which it was alleged that the notes were without consideration and were barred by the statute of limitations.

The basis of the first defense is that the statute under which the Street Improvement District was organized imposed no personal liability for the taxes due it, and there was no authority therefore for making this liability personal, as the District's lien for its taxes could be enforced only by proceeding against the land itself.

It is true, of course, that a suit will not lie to enforce a personal liability against a landowner for the nonpayment of taxes on his land, but this is not a suit of that character, but is one to enforce the security given for a loan, the proceeds of which were used to discharge the

outstanding liens against the lots. The deed of trust here sought to be foreclosed contains the following provisions:

"Now, if the parties of the first part, their heirs, executors and administrators, shall pay the sum of money specified in said three promissory notes with all interest that may be due thereon, when the same shall become due and payable according to the tenor and effect thereof, and shall faithfully keep and perform the agreements aforesaid, concerning the insurance of said edifices as aforesaid and concerning the payment of taxes and assessments as aforesaid, then this deed shall be void and the property hereinbefore conveyed shall be released at the expense of said parties of the first part; but if default be made in the payment of said promissory notes or either of them, or the interest thereon, according to the tenor and effect thereof, or in the faithful performance of said agreement to keep said edifices insured, and to pay all taxes and assessments lawfully imposed on said property, then, and in that event, or either of them, the whole of said indebtedness and each and all of said notes shall become due and be considered due and payable, as if due and payable according to the tenor thereof, and this deed shall remain in full force and effect, and the said party of the second part may proceed to sell the said property hereinbefore described, or so much thereof as may be necessary to fully satisfy and discharge the said indebtedness, together with all the interest thereon, and the cost and expenses of this trust, at public vendue, for cash, . . . "

One of the questions in the case is whether the notes, or any of them, were barred by the statute of limitations. The insistence of appellants is that the maturity date of the first note was May 5, 1942, and that as the suit was not brought within five years of that date it was barred, and further that the acceleration clause above copied operated to mature all the notes, and that the statute of limitations therefore applied to the second and third notes, as well as the first.

The effect of an acceleration clause was discussed at length in the recent case of *Mitchell and Shaw* v. *The Federal Land Bank of St. Louis, Missouri,* 206 Ark. 253, 174 S. W. 2d 671, and they were there said to be of two kinds, (1) optional and (2) automatic. It was there further said that in cases of the first class, the clause does not become effective unless and until the option to accelerate is exercised, but not so as to the second class, in which class of cases the acceleration accrued and the maturity existed when the condition arose which conferred the right of acceleration and that the statute of limitations ran from that date.

We do not again review the cases there cited, but we quote from the headnote of one of them, *Hodges* v. *Dilatush,* 199 Ark. 967, 136 S. W. 2d 1018, reading as follows: "An agreement between mortgagor and mortgagee that 'Default in any payment (of a series of notes) shall and does hereby constitute default in all unpaid notes, in which event all shall be due and payable', is not an option. To the contrary, it is the express contract of the parties that if default occurs all unmatured notes shall, *ipso facto,* become due. The statute of limitation begins to run from the time of such default."

Appellees insist, however, that the statute was tolled by the payment of certain taxes and insurance which the mortgage obligated appellants to pay, and the following cases are cited to sustain that contention: *Dunnington* v. *Taylor,* 198 Ark. 770, 131 S. W. 2d 627; *Bell* v. *McIlroy,* 198 Ark. 1069, 132 S. W. 2d 815; *Dalton* v. *Polster,* 200 Ark. 168, 138 S. W. 2d 64.

In each of those cases it was held that where the mortgagee had discharged an obligation imposed by the mortgage on the mortgagor, such as the payment of taxes or the premiums for insurance to protect the property, the mortgagee had the right to add the cost of such payments to the debt secured as a part thereof, and the implied promise to repay would constitute a new point from which the statute of limitations would run. Appellees say that in 1946 before any of the notes were barred by the statute of limitations and at other times, both taxes

and insurance on the property were paid and the rule announced in the cases above cited applies.

Here, however, neither Mrs. Burch nor her trustee ever paid any taxes or insurance on the property. Those paid were paid by appellants, or by the manager of the loan company, which had a mortgage, to secure its loan of $2,500, which was the first lien and that officer testified that he was unaware of the second mortgage held by appellee Mrs. Burch, and that his payments were not made to protect her security. No presumption could therefore arise or exist that the payments made by the loan association were made for that purpose.

But, while the notes sued on, if representing an ordinary indebtedness, would be barred by limitation, it does not follow in this case that appellee Mrs. Burch is without a remedy.

The $600 indebtedness sued on herein represented money used to redeem the lots involved from delinquent improvement district taxes. The district had brought foreclosure proceedings and had obtained title. It agreed to surrender the title thus obtained, and thereby release its lien as well, upon execution by appellants of notes for $600 secured by a mortgage. These notes, and the mortgage securing same, were sold and assigned by the district to appellee Mrs. Burch, who paid $600 therefor. This amounted, in reality, to a loan by said appellee of the amount required to discharge the improvement district taxes.

The execution of the notes and the mortgage by appellants to the district, and acceptance thereof by the district, by no means canceled the district's lien on the property. On the contrary, by § 20-414, Ark. Stats. (1947), it is provided that such "lien . . . shall continue until such local assessment . . . shall be paid; . . . " There is no authority, statutory or otherwise, for an improvement district to release its lien except upon full payment of all assessments levied against the property.

And we have held that, under the above cited statute, no bar of limitation may be pleaded against an action to enforce collection of an assessment due to an improvement district, except in certain localities affected by a statute not applicable here. *Martin* v. *Board,* 190 Ark. 747, 81 S. W. 2d 414; *Street Improvement District 113* v. *Mooney,* 203 Ark. 745, 158 S. W. 2d 661; *Turner* v. *Street Improvement District No. 4,* 205 Ark. 901, 172 S. W. 2d 25.

When said appellee bought these notes, and the mortgage securing them, given by appellants to the district, she became subrogated to the rights and remedy of the district. *Gainus* v. *Cannon,* 42 Ark. 503; *Flowers* v. *Reece,* 92 Ark. 611, 123 S. W. 773. "Subrogation to the rights of the State includes the State's exemption from the operation of the statute of limitations. One who is subrogated to the rights of the State or municipality by reason of having paid taxes owed by another has the same time in which to recover from the owner the amount paid as the State or municipality would have had to sue for the taxes. If, therefore, the statute of limitations could not have been pleaded by the property owner to defeat an action for taxes, it is not available as against one who has paid the taxes and succeeded to the rights of the State, county or municipality by way of subrogation." 50 Am. Jur. 770.

Appellants have not, in reality, paid their assessment for the local improvement, and, until they do pay it, the lien therefor on their property continues in existence.

In the case of *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475, we considered a somewhat similar, but not identical, question. In that case it appeared that a drainage district had foreclosed its lien and obtained title to certain land, which it sold to Sternberg. It developed, however, that Hart and his grantors had been in actual possession of the land for more than seven years before litigation between Hart and Sternberg was begun. We held that Sternberg, though barred by limitation from obtaining the land, nevertheless was subrogated to the lien of the district for the amount of taxes represented

by the purchase money paid by him to the district, and we directed the lower court to enforce his lien therefor.

Since appellee Mrs. Burch, all the while she was forbearing to collect the notes, was the equitable owner of the district's right to collect the assessments, against which limitation did not run, she could not be said to be guilty of laches in the matter. Certainly appellants' situation was not adversely affected by her forbearance. On the contrary, her indulgence enabled them to meet the payments to the holder of the prior mortgage and thereby save their property. As appellee Mrs. Burch had agreed that this mortgage was superior to her lien, she was at the same time improving her own position as to the debt due her. This was not such fault or carelessness on her part as would preclude equitable relief to her.

The decree of the lower court, awarding appellee Mrs. Burch judgment and lien, subject to the lien of the Helena Federal Savings & Loan Association, was consonant with the principles of equity; and it is affirmed.

Justices McFADDIN and GEORGE ROSE SMITH dissent.

ED. F. McFADDIN, Justice (dissenting). The majority opinion is correct down to the paragraph which reads: "But, while the notes sued on, if representing an ordinary indebtedness, would be barred by limitation, it does not follow in this case that appellee Mrs. Burch is without a remedy."

Beginning with the paragraph as just identified, and continuing to the conclusion of the opinion, the majority has given Mrs. Burch relief by subrogation; and to that portion of the opinion I respectfully dissent. Here are my reasons:

1. Mrs. Burch did not ask for subrogation. The case was not tried on that theory in the lower court, and was not briefed on that theory in this court. The majority decided that Mrs. Burch would be barred by limitations, except for the theory of subrogation, and then proceeded to give her relief by subrogation, which was a right she had never claimed, and which the appellant had no occasion or opportunity to disprove or refute.

2. Subrogation does not apply to the facts here presented. The improvement district had title to the property when it dealt with Leuken. The tax lien of the district had been extinguished by the act of the district in purchasing the property at the foreclosure sale. The district's "lien" for unpaid assessments became extinguished when the district purchased the property at the sale which foreclosed that lien. So when Mrs. Burch made a loan of $600 to Leuken, the proceeds of the loan went to *purchase* the property and not merely to *redeem* from a tax delinquency. By applying subrogation, the majority is attempting to let the district keep its lien and foreclose it at the same time; and, in effect, is allowing Mrs. Burch to have her cake and eat it at the same time.

3. *Hart* v. *Sternberg*, 205 Ark. 929, 171 S. W. 2d 475, is not ruling here, because in that case the rights of a person in possession were considered as against one who, by payment, had made such continued possession possible. Here the majority is letting Mrs. Burch acquire rights from the district which the district had itself extinguished when it foreclosed its lien.

4. The case of *Troyer* v. *Bank of DeQueen*, 170 Ark. 703, 281 S. W. 14, is not cited by the majority, but is the case that applies to the situation here. Between the lien of the improvement district in the case at bar and the mortgage of Mrs. Burch, there is the intervening lien of the Building and Loan Association, and that intervening lien stands as a wall to prevent any subrogation.

For these reasons, I respectfully dissent from so much of the majority opinion as allows Mrs. Burch to prevail under the theory of subrogation.