WHITAKER & CO. v. SEWER IMPROVEMENT DIST. No. 1
OF DARDANELLE, ARK.

5-1644                                          318 S. W. 2d 831

Opinion delivered November 24, 1958.

[Rehearing denied January 12, 1959]

*Spitzberg, Bonner, Mitchell & Hays* and *S. L. White,* for appellant.

*Williams & Gardner,* for appellee.

*Goodier & Parsley, amici curiae.*

ED. F. McFADDIN, Associate Justice. This appeal involves matters of Sewer Improvement District No. 1 of the City of Dardanelle, Arkansas (hereinafter called "District"), occurring at various times from 1936 up to the present. A chronological statement, though lengthy, may serve to an understanding of the points presented on this appeal.

1. The District was organized in 1917 under the Municipal Improvement District Statutes then in effect (see §§ 20-101 *et seq.* for the present statutes). In 1918 the District sold $32,500 of its 6% bonds, secured by mortgage of the assessed benefits. The bonds were payable serially and annually from 1918 to 1939. Whitaker & Company (who, along with Roy A. Dickie, will hereinafter be referred to as "Appellants") became the owner of some, if not all, of the bonds issued by the District. The maturing bonds and interest appear to have been regularly paid until 1928, when the District defaulted.

2. In November 1936 Whitaker and Company, on behalf of the bondholders, filed complaint against the

District in Case No. 2856 in the United States District Court for the Eastern District of Arkansas (which case and Court are hereafter referred to as "Federal case" and "Federal Court"). The complaint was to obtain judgment for debt, to foreclose the mortgage, and for other relief. In October 1937 the Federal Court entered a decree awarding judgment to the plaintiffs and appointing a Receiver for the District to foreclose in the State Court the District's lien on delinquent assessments. A portion of the judgment became owned by R. A. Dickie. The Federal Court appointed D. A. Love as Receiver of the District. Other Receivers were substituted by Federal Court order over the years, but we use the term "Receiver" to designate the person acting under the Federal Court orders.

3. In 1939 a suit was filed by the Receiver in the Yell Chancery Court to foreclose the District's lien for delinquent assessments against each parcel of land in the District. This was Case No. 1522 in the said Chancery Court, and will be hereinafter referred to as the "State case" and the "State Court." That case was styled on the docket of the State Court as, "*D. A. Love, Receiver, Sewer Improvement District No. 1 of Dardanelle, Arkansas, Plaintiff,* v. *Delinquent Lands, Defendants.*" Foreclosure decree was entered in the State case in 1941 and sale ordered. We will subsequently refer to this as "the 1941 foreclosure." At the sale by the Commissioner of the Court, all parcels not sold to other parties were sold to the District. The report of sale of the Commissioner in Chancery was approved by the State Court, and the Commissioner in Chancery was directed to issue deeds to purchasers after the time for redemption had expired. The Commissioner in Chancery died, and there is no record of any deeds being issued. The original file of proceedings in the State Court has been lost; but it is apparent from the docket entries, record entries of proceedings, and by other evidence, that most of the parcels of land in the 1941 foreclosure suit were sold to the District. No disposition of

any of the parcels seems to have been made until the decree here challenged.

4. For many years after 1941 the matters of the District lay dormant or semi-dormant in both State and Federal Courts, although some interlocutory orders were made in the State Court, as well as in the Federal Court. At various times Receivers were substituted by the Federal Court in the place of D. A. Love; and other interlocutory orders were made; but the recital of any of these is not essential to the issues here. The effect of Act No. 79 of the 1933 Arkansas General Assembly was not called to the attention of the Federal Court for many years. Then in 1956 in the Federal case, the Court appointed the Commissioners of the District, "to proceed in good faith and with all reasonable speed to liquidate the assets of the District.[1] . . ."

5. In 1956 Whitaker and Company and R. A. Dickie intervened in the Case in the State Court and alleged: (a) that the judgments rendered by the Federal Court in the Federal case in their favor remained unpaid, and with interest, amounted to approximately $42,000; (b) that the unpaid and unforeclosed benefits did not equal said judgment; (c) that the District has property which it acquired in the 1941 foreclosure in the State case; (d) that said property should be sold and proceeds applied on the $42,000 claim; and (e) for all other relief. This intervention stirred the District and the Commissioners to action. The Commissioners (Webb, Snyder, and Keenan, as named in the Federal Court order, *supra*) filed their pleading in the State case, pointing out: that many property holders had been willing to pay delinquencies as soon as the legality of the 1941 foreclosure suit in the State Court

[1] This order of the Federal Court recites in part: "It is further ordered by the Court that the Commissioners of said District, namely, Harold Snyder, Lewis A. Webb and Dan Keenan, proceed in good faith and with all reasonable speed to liquidate the assets of said District and wind up the affairs of said District to the end that the judgments in this cause may be satisfied, or so much thereof as possible; . . ."

could be determined; and that the question was whether in the light of said Act No. 79 of 1933 a Federal Receiver could foreclose in the State Court in the place of the Commissioners of the District. The Commissioners expressed a desire and willingness to proceed as soon as, and in the manner, directed by the Court. Other pleadings were filed by various intervenors and *amici curiae*.

6. There was a trial in the State Court on the various issues; and documents were introduced showing various orders and proceedings in both State and Federal cases during the many years intervening from 1936 to the present. The recitation of all of this would serve no useful purpose. On March 17, 1958 the learned Chancellor rendered the decree here challenged on appeal. In that decree the Chancellor of the State Court said:

"A matter of prime concern at this time is the determination of the validity or invalidity of the foreclosure obtained in the name of the Receiver. The issue is presented to the court upon the petition of the Representatives of the judgment holders in Federal Court who contend the title to the foreclosed lands is already in the District and this court should direct a commissioner to prepare proper deeds to the district and then subject the lands of the district to the satisfaction of their judgment.

"The Commissioners of the District ask that the entire foreclosure proceeding be declared a nullity and that this court set forth instructions how to marshal the assets of the District.

"It is apparent that some past commissioners of the District have by word and action led the owners of delinquent property to believe that the foreclosure proceeding was void and should be disregarded, and it is more than just a possibility that such action together with the disregard of the provisions of Act 79 of 1933 caused the chancery court of Yell County to hold the execution of deeds in abeyance."

And again the Chancellor said:

"The decree of the Yell Chancery Court has been on record since 1941. The subject matter was within the jurisdiction of the court. The owners of the delinquent land knew that the taxes had not been paid. No attack was filed in either court asking the removal of the Receiver. The Receiver collected some delinquencies and executed proper receipts and releases. To hold the Receivership void would be to penalize those taxpayers who were trying to pay what they knew they owed. Certainly their payments to the Receiver were valid extinguishment of the taxes levied against them. Every act of the Receiver was pursuant to his authority emanating from the United States District Court; and in this foreclosure action had the added authority of being within the jurisdiction of the Yell Chancery Court.

"This Court, therefore, holds that the Receivership was a valid receivership and the judgment of the Yell Chancery Court a valid judgment. Without relying in any manner upon any argument based upon whether or not the Yell Chancery Court judgment can be properly attacked at this late day in this matter this court finds that the foreclosure was and is a valid foreclosure.

"At the same time this court finds that the commissioners of the District should be substituted as parties plaintiff and stand in the place of the Receiver in this action (Chancery No. 1522); that the commissioners shall compute the delinquencies against the lands involved in this action with interest at the rate of 4% per annum[2] and cause notice of such delinquent amounts and the delinquent property to be published in the Dardanelle paper for 3 consecutive weekly issues notifying all interested parties and persons that owners of the delinquent lands can and may redeem the same by paying the delinquency with accumulated interest within 90 days from the date of the first publication of such notice.

---

[2] This 4% interest rate will be discussed in Topic II *infra.*

"The Commissioners of the District are hereby directed to proceed to collect the assets of the District including the delinquencies hereinabove referred to and in an orderly manner proceed to administer the affairs of the district to the end that whatever amounts are available to pay to creditors will be speedily made available for that purpose."

7. Under the said Decree there were other provisions wherein the Commissioners were directed to proceed in a manner which intervenors disliked; and from that decree the intervenors (Whitaker and Company and R. A. Dickie) bring this appeal, making three assignments, as follows:

"1. The Court erred in not ordering the issuance of deeds to the District of lands sold it at the foreclosure sale not redeemed within five years.

"2. The Court erred in fixing the rate of interest at 4% instead of 6% per annum on the delinquent assessments as provided in the judgment Jan. 10th, 1941.

"3. The Court having upheld the validity of the foreclosure sale, erred in failing to direct the Commissioners to use sound judgment in disposing of properties for liquidation of debt."

The District as appellee says in its brief in this Court:

"The sole question bothering Commissioners is whether or not the Foreclosure Decree of the Chancery Court of Yell County, entered on the 10th day of January, 1941, is of such validity that title to real property passed under and in accordance with it will divest the former owner of all right and claim which he may have had and invest the new owner with a good and indefeasible, fee simple title.

"This question turns on whether or not the foreclosure suit brought solely in the name of D. A. Love, Receiver, for the Sewer Improvement District has any

validity in light of Section 20-1120, Arkansas Statutes of 1947 (Act 79 of the General Assembly for the State of Arkansas for the year 1933) and the decisions of this Court interpreting that Act.''

In the *amici curiae* brief filed on behalf of the City of Dardanelle, there is the argument that the 1941 foreclosure decree is completely void.

Having stated the chronology and the points on appeal, we proceed now to our decision.

I. *The Effect The Chancery Court Gave To The 1941 Foreclosure Decree Of The State Court.* A court of equity is a court of conscience: a forum wherein justice[3] is done, sometimes stripped of technicalities and red tape. A court of equity should be as alert to afford redress as the ingenuity of man is to cause situations to develop which call for redress. In one case we said:

''A court of conscience must keep the granted relief abreast of the current forms of iniquity. We should never naively refuse relief . . . simply because there is no similar instance of such . . . in any of the books.'' (*Renn* v. *Renn*, 207 Ark. 147, 179 S. W. 2d 657.)

In the case at bar the court of equity wisely considered the relative positions of the various parties and rendered a decree that does substantial justice to all.

The appellants contended in the lower Court: (a) that the 1941 foreclosure decree was valid; (b) that the District owned the land that was sold to it in the said foreclosure sale; and (c) that the Commissioners should immediately sell the land and pay the appellants' claim. The appellants also alleged in their intervention, ''. . . that the assessments remaining un-

[3] In 19 Am. Jur. 41 (Equity § 4) this statement appears: "But the primary character of equity as the complement merely of legal jurisdiction, in that it seeks to reach and do complete justice, where courts of law, through the inflexibility of their rules and want of power to adapt their judgments to the special circumstances of cases, are incompetent so to do, persisted and still persists."

paid in said Sewer Improvement District, all of which are delinquent, if collected, would not pay even one-third of the judgments; and that the only manner in which Roy A. Dickie will ever receive the amount to which he is entitled is by the plaintiffs, that is, the District, obtaining title to the various tracts of land which have been sold to the District and not redeemed within the time provided by law.''

We find no substantial evidence in the record to support the copied allegations. Evidently the appellants meant, by the copied allegations, to state that with the District owning the foreclosed property and with no assessments thereafter collected on said property, then the assessments remaining unpaid on the other property would not pay the appellants' judgments. But under the order of the Chancery Court here appealed, the Commissioners must collect *all delinquent assessments on each parcel* of property sought to be redeemed, together with interest from the date each assessment was due until it is paid. That is to say, the Commissioners calculate not only the assessments that were involved in the 1941 foreclosure, but all subsequent assessments. The adding of these subsequent assessments, together with interest, will materially change the situation from that alleged by the intervenors, as above copied. If any parcel sold to the Receiver (District) in the 1941 foreclosure sale is not so redeemed within the limited time stated in the decree here challenged, then the Commissioners will forthwith be entitled to a deed to such property; and thereupon the Commissioners will have the right of sale. So we fail to see how the appellants can be seriously hurt under the decree that the Chancellor rendered herein.

On the other hand, appellees stated in their pleadings that some of the property holders had been advised that the 1941 foreclosure decree of the State Court was void because the Arkansas statute forbade the appointment of an outside third person as a Receiver. The ap-

pellees ask for instructions.[4] Conceding only for the sake of argument that the 1941 foreclosure proceeding in the State Court could be held to be a nullity, then the unpaid and delinquent assessments involved in that proceeding are still due, and all subsequent delinquent and unpaid assessments are still due; and all of these should be foreclosed. Against these assessments there could be no successful plea of limitation because the statute provides (§ 20-414 Ark. Stats.): "Said local assessment shall be a charge and a lien against all the real property in said District, . . . and shall continue until such local assessment, with any penalty and costs that may accrue thereon, shall be paid;[5] . . . " We held in *Martin* v. *Board of Commissioners,* 190 Ark. 747, 81 S. W. 2d 414, and in *Lueken* v. *Burch,* 214 Ark. 921, 219 S. W. 2d 235, that the statute of limitations does not run against the right of an improvement district (such as the one here involved) to foreclose its lien.[6] If the entire 1941 suit had never been filed, a foreclosure could now be maintained for *all* delinquent assessments, penalty, and costs against each parcel of property. At some time the property owner of each tract must pay the amounts due or lose the property; so the setting aside of the 1941 foreclosure proceeding in the State Court would not defeat payment.

The appellants, as judgment creditors, are entitled to payment — not property. The plan evolved by the learned Chancellor will produce money because of the necessity of redemption. If the property owners do not pay, then they will lose their property. In *Greer* v. *Blocker,* 218 Ark. 259, 236 S. W. 2d 68, a drainage dis-

---

[4] Of course, the *amici curiae* claim that the whole 1941 proceeding is void; but, even so, it would not relieve the property from the unpaid benefits as hereinafter discussed.

[5] Act 85 of 1925 prescribing a period of limitations for filing foreclosure suits for delinquent assessments applies only to Counties having a population of 75,000 or more; and we judicially know that Yell County does not have such population, so Act 85 of 1925 has no application.

[6] The language in § 190 of Act 195 of 1949 (as found in § 20-422 Ark. Stats.), in using the words, "within six months", is directory merely. The statute that is amended (§ 7313 Pope's Dig.) had used the word, "forthwith"; so the 1949 Act in using the words, "within six months", was directory and did not provide a period of limitation.

trict had for many years held title to several thousand acres of land acquired by it at a foreclosure sale for delinquent assessments. We said in that case: "Also the Chancery Court should direct the Receiver to ascertain and report the wise way to dispose of the lands on hand, so that the most money may be realized therefrom; in short, the Chancery Court should direct the Receiver to undertake the liquidation of the debts of the District . . . " In the case at bar, the Chancellor has evolved a plan which is designed to accomplish for Sewer Improvement District No. 1 of Dardanelle exactly what should be done: the obtaining of all delinquent assessments and interest thereon or title to the property that remains delinquent. So, with the exception of the interest rate — to be discussed in Topic II *infra* — we think the Chancellor's decision was just and equitable in all respects.

II. *The Interest Rate.* The Chancery Court provided interest at 4% per annum to be paid on each delinquent assessment[7] when any property holder sought to redeem. Since the judgment of the appellants bore 6% interest and the bonds were 6% bonds, we conclude that the interest rate, to be charged by the Commissioners on each delinquent parcel sought to be redeemed, should be 6% per annum, so that the appellants cannot lose because of interest rate.

Who can complain at 6% per annum interest? (1) Certainly not the property holders (see *City of Eureka Springs* v. *Banks,* 206 Ark. 289, 174 S. W. 2d 947). If the property owners pay 6% per annum interest they are still receiving a most equitable consideration. (2) Certainly not the appellants. They purchased bonds that bore 6% interest and looked to the assessed benefits. If the Chancery Court requires the interest rate for the redemption to be 6% per annum on each delinquent assess-

---

[7] Since the benefits were payable 4% each year until paid sufficiently to retire the bonded indebtedness, the Chancellor may have used the 4% interest rate, although his reason for using 4% interest instead of 6% is not stated.

ment from the time of delinquency until paid, then the amount received from the interest will be at the same rate as the interest on the bond issue and the judgment they hold.

We modify the decree to make the interest rate on redemption to be 6% per annum instead of 4% per annum. In all other respects the decree is affirmed at cost of appellants. The cause is remanded to reinvest the Chancery Court with jurisdiction for further proceedings.

WILLIAM J. SMITH, J., not participating.