The Honorable Jimmy "Red" Milligan State Representative P.O. Box 68 Yellville, AR 72687-0068
Dear Representative Milligan:
I am writing in response to your request for my opinion on a question arising from what you report as being the following facts:
 The Diamond City Sewer Improvement District #1 was formed and in operation in 1989. Each parcel in Diamond City was assessed according to the distance from the sewer. The sewer has an improvement bond with FHA Rural Development at five percent for 40 years.
 Since the assessments were started, the Sewer Improvement District (SID) has experienced delinquencies. People out of state, if not out of the city, own a majority of the vacant parcels.
 Delinquent property goes to the State Land Commissioner after two years, of which they hold for another two years, and if not redeemed, go on sale at their annual sale. When the property is not sold at the land sale, 90 days after sale, property may be redeemed, and according to certain time frames may be redeemed for "certain offers" accepted by the State Land Commissioner. The State Land Commissioner does not collect Improvement District assessments.
 Upon redemption of any parcel, the SID is notified by the Boone County Collector, whereupon the SID then sends a letter stating the number of years delinquent and how much is owed, including late penalties at ten percent and interest at five percent on assessments.
 Many times the redeemer will not pay these delinquent assessments and the property goes delinquent again, since the redeemer feels they [sic] are not responsible for ten years of delinquent assessments.
Against this backdrop, you have posed the following question:
 Is there any means in Arkansas Law where a sewer improvement district could forgive all or a portion of these assessments, so that the property will be more attractive to new owners and not be a delinquent parcel?
RESPONSE
In my opinion, A.C.A. § 14-90-805(b) precludes the SID from forgiving delinquent assessments. Additionally, the FHA Rural Development bond agreement, which was not provided for my review, may contain security provisions that would prohibit the SID from undertaking any unilateral forgiveness of delinquent assessments.
With respect to the priority of a municipal improvement district lien for assessments, A.C.A. § 14-90-805 provides in pertinent part:
 (a) An assessment shall be a charge and a lien against all the real property in a municipal improvement district from the date of an ordinance and shall be entitled to preference over all judgments, executions, encumbrances, or liens whenever created.
 (b) The lien shall continue until the local assessment, including any penalty and costs that may accrue thereon, shall be paid. Provided, however, with the prior written approval of the board of improvement, the county clerk shall release from the lien of any assessment any lot, block, or tract with respect to which the assessment shall have been paid or prepaid.
Applying this principle to road improvement district special assessments, the Arkansas Supreme Court has offered the following summation:
 The tax so levied shall be a lien upon all the real property in the district from the time same is levied by the county court, and shall be entitled to preference over all demands, executions, encumbrances or liens whatsoever created, and shall continue until such assessments, with penalty and costs that may accrue thereon, have been paid.
Turley v. St. Francis County Road Improvement District No. 4,171 Ark. 939, 939, 287 S.W. 196 (1926). Although the court acknowledged that the statutory language "all demands, executions, encumbrances or liens whatsoever created" did not refer to the State's paramount tax lien, it did declare that pursuant to the statute, "the special taxes of the improvement district shall continue until fully paid, and are not extinguished." Id. at 942.
In commenting on Turley, one of my predecessors observed:
 A review of statutory provisions governing the various types of improvement districts reveals language similar to that cited in the Turley case, supra, with respect to the district's lien for taxes. See, e.g., A.C.A. 14-90-805, 14-92-228, 14-93-119 and 14-123-409 with respect to municipal improvement districts, suburban improvement districts, property owners' improvement districts, and levee improvements districts, respectively.
 It thus seems clear that while the State is not required to discharge improvement district tax liens, an improvement district does not lose its lien because of certification of the lands to the State.[1]
Rather, the special improvement district lien may be enforced when the land returns to private ownership. See, e.g., Harris v. Little Red River Levee Dist. No. 2, 188 Ark. 976 [188 Ark. 975], 69 S.W.2d 877
(1934); Terry v. Drainage District No. 6, Miller County, 206 Ark. 940, 178 S.W.2d 857 (1943); Spikes v. Beloate, 206 Ark. 344, 175 S.W.2d 579
(1943). The court in Harris v. Little Red River, supra, at 978-979, expressed this precept as follows:
 The decree of confirmation does not relieve the purchaser from the State of payment of assessments because the sale to the State does not extinguish the lien. . . . [I]t is the duty of the purchaser to pay the districts' special improvement taxes in order to extinguish the liens of the districts for the payment thereof. . . .
Ark. Op. Att'y Gen. No. 88-204.
From your recitation of the facts, I gather that various individuals who redeemed their properties by satisfying their property tax delinquencies allowed their property taxes to become delinquent again upon realizing that their delinquent SID assessments continued to constitute a lien on their properties even after they had redeemed the properties from the state. See A.C.A. § 14-90-805. You have asked whether the SID might forgive delinquent assessments as a means of discouraging property owners, particularly those from out of state, from simply abandoning their property.
In my opinion, the answer to this question is "no." Subsection14-90-805(b) of the Code is absolutely unambiguous in declaring that an unpaid assessment shall create a lien against all property in the district until the assessment is paid in full, subject only to the condition that, "with the prior written approval of the board of improvement, the county clerk shall release from the lien of any assessment any lot, block, or tract with respect to which the assessment shall have been paid or prepaid." Accord Whitaker Co. v. SewerImprovement District No. 1, Dardanelle, 229 Ark. 697, 706, 318 S.W.2d 831
(1958); Lueken v. Burch, 214 Ark. 921, 926, 219 S.W.2d 235 (1949) ("There is no authority, statutory or otherwise, for an improvement district to release its lien except upon full payment of all assessments levied against the property.").
In all likelihood, releasing the liens would further be inappropriate in light of your report that "[t]he sewer has an improvement bond with FHA Rural Development at five percent for 40 years." Although your request contains little background information regarding the formation of the SID and the nature of the FHA's involvement, some additional information can be gleaned from Ark. Op. Att'y Gen. No. 93-365, which likewise related to the Diamond City SID.[2] As my predecessor observed:
 According to the correspondence attached to your request, the District was established by Diamond City ordinance dated September 16, 1987, in order to finance the initial construction cost of the Diamond City collection system. Once construction was completed, Diamond City assumed responsibility for operating its collection system. The correspondence also states that an Inter-Municipal Service Agreement was entered on September 23, 1988 (and an Addendum dated March 17, 1989), between the District, the Sugarloaf Wastewater Treatment District, the City of Diamond City, and the towns of Lead Hill and South Lead Hill. A 1989 Diamond City resolution arranged for the District to enter into a $1,175,000.00 mortgage with Farmers Home Administration.
In the text of one of the questions addressed in Opinion No. 93-365, the SID further set forth the following facts:
 We do not have by-laws. None were provided for us. We do operate under a letter of condition from Farmers Home Administration, and under the documents provided by Bond Council [sic], and by advice from the former city attorney who was with the SID from its beginning. We have formalized guidelines for assessments in accordance with the requirements for paying the debt and fairness to the landowners.
I assume, although only a finder of fact could ultimately determine, that the FHA loan documents contain provisions that protect its security by conditioning the SID's ability to forgive debt. Consequently, even assuming the Code did not preclude forgiving delinquent assessments, which it does, the SID might well be precluded by the FHA loan documents from unilaterally forgiving delinquent assessments.[3]
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The law regarding forfeiture of property to the state for failure to pay property taxes is set forth in chapter 37 of title 26 of the Arkansas Code. In Ark. Op. Att'y Gen. No. 2001-097, I reviewed the somewhat thorny issue of who actually owns the property during the course of forfeiture and redemption under the Code. As my predecessor acknowledged in Opinion No. 88-204, the Land Commissioner is indeed not obligated to collect improvement district assessments in connection with a sale by the state to a third party.
[2] The Diamond City SID was also the subject of Ark. Op. Att'y Gen. No. 93-058, which does not bear upon your request.
[3] Although it does not bear directly on your request, I will note that as a matter of statutory law the existence of the FHA loan might well restrict the SID's ability to reduce future assessments. Subsection14-90-602(a) of the Code provides:
 The commissioners of any municipal improvement district may require the assessors thereof to revise their assessment not more often than once per annum, increasing or diminishing the assessment against particular pieces of property as justice may require. However, the total amount of benefits shall never be diminished if the district shall have borrowed money or incurred indebtedness.
See also A.C.A. § 14-86-602 ("Where any improvement district shall have issued bonds or incurred indebtedness, the total amount of the assessed benefits shall never be reduced upon a reassessment."); MaumelleBoulevard Water Sewer District No. 1 v. Davis, 315 Ark. 353, 360,868 S.W.2d 73 (1993) (clear error for chancellor to afford relief that diminished the total amount of benefits assessed so long as indebtedness remained).