GILLIOZ *v.* KINCANNON, JUDGE.

4-8575　　　　　　　　　　　　　214 S. W. 2d 212

Opinion delivered October 25, 1948.

*Harper, Harper & Young* and *J. W. Durden,* for petitioner.

*Paul X. Williams* and *George E. Lusk, Jr.,* for respondent.

HOLT, J.   This action is an original proceeding wherein M. E. Gillioz, petitioner, seeks a "Writ of Prohibition" to enjoin Judge J. O. Kincannon, Judge of the Logan Circuit Court, Southern District, from assuming jurisdiction in three separate tort actions instituted by different plaintiffs, one by J. L. Strickland and L. J. Willis, a second by Jess Tillery, and a third by C. A. Gantt, against petitioner, M. E. Gillioz.

Petitioner alleged in his petition that on August 23, 1947, the above plaintiffs sued him along with H. J. Doty, alleging that petitioner and Doty "while engaged in doing business in the State of Arkansas, clearing an area known as the Blue Mountain Dam area in South Logan county, Arkansas, carelessly and negligently set fire to grass and timber adjoining plaintiffs' lands on the .......... day of August, 1946, without giving notice to these plaintiffs; and fire spread to plaintiffs' lands and burned and injured the lands and growing timber, the meadows and the grazing land, and prayed judgment against the defendants for $2,500, costs. . . ."

That constructive service was had on petitioner, Gillioz, who was a nonresident, living in Monette, Missouri, that said service was had in accordance with the provisions of Act 347 of the 1947 acts of the Legislature.

He further alleged "that on September 16, 1947, defendant, M. E. Gillioz, appearing specially for the purpose of presenting his motion and for no other purpose and at all times objecting to the jurisdiction of the court over his person, filed a verified motion to quash service of summons alleging that the attempted service of summons upon him by serving summons on C. G. Hall, Secretary of State of the State of Arkansas, and by notifying said defendant by United States mail by sending copy of summons and copy of complaint to him under the provisions of Act 347 of the Acts of Arkansas for

1947, was void and did not give the court jurisdiction over the person of this defendant for the reason that the provisions of Act 347 of the Acts of Arkansas for 1947 are void as being in contravention of the Constitution of the United States and the Constitution of Arkansas; defendant further stated in his motion that even if Act 347 of 1947 be not unconstitutional for the reason aforesaid, service could not be had upon this defendant under provisions of this Act for the reason that the complaint showed on its face that the cause of action sued upon arose prior to the adoption of said Act and the General Assembly of the State of Arkansas was without power to make the provisions retroactive, since it affects a substantive right of this defendant; defendant further stated that at the time of the filing of this action and at the time of the attempted service upon him, he was not engaged in any business in the State of Arkansas, is not now so engaged and has not been engaged in business in the State of Arkansas since the filing of this action; that on January 16, 1948, said Motion to Quash Service of Summons was presented to the court and after hearing the verified motion and considering the pleadings filed, the same was overruled, to which ruling of the court the petitioner excepted; . . .

"That the Logan Circuit Court, Southern District, is exercising or threatening to exercise jurisdiction over the person of M. E. Gillioz, a resident of the State of Missouri, in a cause of action which arose out of alleged acts of this petitioner, which according to the complaint, occurred during the year of 1946."

Petitioner, Gillioz, concedes that this case comes within the provisions of Act 347 of 1947 and that the procedure therein outlined for a nonresident service was followed. He earnestly contends, however, (1) that this Act is unconstitutional in its entirety and (2) that, in any event, that part of § 4 which provides that its provisions shall be applicable retroactively is void.

## (1)

The Act contains the following provisions: "Section 2. Any nonresident person, firm, partnership, general or

limited, or any corporation not qualified under the Constitution and Laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the Secretary of State, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued or accruing from the doing of such business or the performing of such work, or service, or as an incident thereto by any such nonresident, or his, its or their agent, servant or employee. Service of such process shall be made by serving a copy of the process on the said Secretary of State, and such service shall be sufficient service upon the said nonresident of the State of Arkansas, provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant at his last known address, and the defendant's written return receipt, or the affidavit of the plaintiff, or his attorney of compliance herewith are appended to the writ of process and entered in the office of the clerk of the court wherein said cause is brought. The court in which the action is pending may order such continuance as may be necessary to afford the defendant, or defendants, reasonable opportunity to defend the action.

"Section 3. Service of summons when obtained upon any such nonresident as above provided for the service of process herein shall be deemed sufficient service of summons and process to give to any of the courts of this state jurisdiction over the cause of action and over such nonresident defendant, or defendants, and shall warrant and authorize personal judgment against such nonresident defendant, or defendants, in the event that the plaintiff prevails in the action.

"Section 4. The provisions of this Act shall be applicable both retroactively and prospectively.

"Section 5. Each paragraph, each sentence and each clause of this Act shall be treated and construed as be-

ing separable and the invalidity of any paragraph, sentence or clause shall not affect the validity of the other paragraphs, sentences or clauses.''

It is admitted that the tort actions involved here arose in August, 1946, prior to the passage and approval by the Legislature of Act 347 in 1947.

We have reached the conclusion that the Act, insofar as it is prospective, is constitutional and a valid exercise of the legislative authority, but invalid and unconstitutional insofar as it attempts to make its provisions retroactive, in effect, and we therefore hold that the service here on the petitioner is void.

On the question of the constitutionality of Act 347 of 1947, it appears that the same procedure, in effect, for service of process on nonresidents, not qualified to do business in this state and who shall do any character of work or service in Arkansas, was required by Act 94 of 1941, applying to the practice of optometry, but the constitutionality of Act 94 was upheld by this court in *Ritholz* v. *Dodge, Chancellor,* 210 Ark. 404, 196 S. W. 2d 479, 167 A. L. R. 705. The same procedure, in effect, was required by Act 39 of 1933 affecting nonresident motorists and the consttiutionality of that Act was sustained in *Kelso* v. *Bush,* 191 Ark. 1044, 89 S. W. 2d 594. See, also, *Yocum* v. *Oklahoma Tire & Supply Co.,* 191 Ark. 1126, 89 S. W. 2d 919, in which Act 70 of 1935 a companion Act to Act 39 of 1933, *supra,* which permitted substituted service on nonresident owners by service on their agents when engaged in the particular business set out in the act.

In discussing the constitutionality of Act 347 of 1947, here involved, then considered prospectively only, Dr. Leflar in 1 Ark. Law Rev., No. 4, page 201, makes the following comment: ''The principal purpose of Act 347 of 1947 was to extend the circumstances in which Arkansas courts may exercise personal jurisdiction to render judgments *in personam* on constructive service against nonresident defendants in suits on causes of action arising out of acts done by such defendants in Arkansas,'' and on the validity of the Act, said: ''The

basic problem is the same as that which arose under the 1935 enactment (Act 74) referred to above. It has long been recognized that the doing of acts within the state is a sufficient basis for personal jurisdiction over foreign corporations, even though the artificial language of implied consent and presumed presence was sometimes used in the cases as a make-weight to sustain jurisdiction. The same reasoning sometimes with some of the same make-weights, sustained jurisdiction against nonresident motorists in actions for damages arising out of highway accidents in which they participated. The United States Supreme Court has sustained state jurisdiction over the nonresident members of a firm or partnership on causes of action arising out of the firm or partnership business done in the state. (Citing *H. L. Doherty & Co.* v. *Goodman,* 294 U. S. 623, 55 S. Ct. 553, 79 L. Ed. 1077.) It is today established that the true basis for jurisdiction by constructive service on a nonresident under such circumstances is the fact of doing acts or causing them to be done, in the state, the acts being of the type so affecting the public interest, in that they are apt to give rise to causes of action in local citizens, that such police regulation as is represented by these statutes is allowable. This theory has been definitely adopted by the Arkansas Supreme Court in upholding the 1935 enactment.''

In the Doherty case, *supra,* cited by Dr. Leflar, a nonresident citizen of New York was doing business in Iowa through an agent. In the present case, it is conceded that petitioner, Gillioz, a nonresident, was doing business in Arkansas, either in person or by agent. In upholding the constitutionality of the statute, the court said: ''By its terms and under our holdings, the statute is applicable to residents of 'any other county' than that in which the principal resides, whether such county be situated in Iowa or in some other state. In other words the statute does apply to nonresidents of Iowa who come within its terms and provisions, as well as to residents. . . . The statute is applicable to individual nonresidents who come within its express terms and provisions. . . .

"The statute in question does not in any manner abridge the privileges or immunities of citizens of the several states. It treats residents of Iowa exactly as it treats residents of all other states. . . .

"The justice of such a statute is obvious. It places no greater or different burden upon a nonresident than upon the resident of this state. . . . A nonresident who gets all the benefit of the protection of the laws of this state with regard to the office or agency and the business so transacted ought to be amenable to the laws of the state as to transactions growing out of such business upon the same basis and conditions as govern residents of this state."

In the case of *International Shoe Co.* v. *Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057, in which constructive service was involved, the following rule was announced: "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their *de facto* power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565. But now that the *capias* and *respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

In the case of *Sugg* v. *Hendrix,* 142 Federal Reporter, 2nd series, p. 740, the Circuit Court of Appeals, 5th Circuit, upheld the constitutionality of a Mississippi statute similar (except that there is no retroactive clause) to Act 347, *supra,* in fact, being in all material provisions almost an exact copy of our Act. In that case, quoting from the court's statement, it was said: "The process on the defendant was under the aforementioned statute, which the defendant, appearing specially, moved to quash, asserting that the statute was

unconstitutional in that a state could not provide for other than personal service of process upon a nonresident individual so as to subject him to a money judgment merely because such individual nonresident was doing business in the state. He insists that the statute denies nonresident individuals: (a) Due process of law; (b) the equal protection of the law; and (c) the same privileges and immunities as are allowed resident citizens. The court below was of the opinion that *Flexner* v. *Farson*, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250, was decisive and the process was quashed on the strength of the holding in that case," and in reversing the action of the court, the court used this language: "The statute in question takes due precaution to insure the defendant of the receipt of the notice and of a reasonable opportunity to appear and to defend the case. Since the Act does this, and since it makes the nonresident who does business in the state through managers, superintendents, and foremen, or *in absentia*, subject to process only in actions for damages arising out of such business in the same manner as a resident, we are of the view that it does not deny the defendant the equal protection of the law, due process of the law, nor deny to him any privileges and immunities that are afforded to a resident of the state. . . . The thought is not shocking that one who comes into a state for the purpose of conducting his business in that state should be made amenable to the courts and laws of the state and answerable to its citizens for damages sustained by them which were the result of the business transacted in the state."

Our conclusion, therefore, as has been indicated, is that Act 347 is constitutional, in its prospective operation, and applies to all nonresidents "not qualified under the constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state," subsequent to the effective date of the said Act, and does not violate any constitutional right of such nonresident since it provides for a form of service, the effect of which is to give the defendant actual notice. It does not violate the

due process clause since it requires a legal basis for jurisdiction, that is the nonresident, defendant, must have done some business, work or service within the state. It does no violence to the privileges and immunities clause because it does not discriminate between nonresidents but places them upon the same basis as residents.

(2)

As above noted, petitioner's contention that the retroactive application of Act 347, in the circumstances here, is unconstitutional and void, must be sustained for the reason that to uphold its retroactive effect would destroy a substantive right which petitioner enjoyed prior to its enactment and at the time the tort actions here arose.

We cannot agree with respondent's contention that the Act is procedural only.

The rule appears to be well settled generally that retrospective laws as the one here, are unconstitutional if they interfere with substantive, or substantial rights, and are valid only when they effect remedies or procedure. C. J. S. 16, p. 861, § 417 et seq.

"Rights conferred by statute are determined according to statutes which were in force when the rights accrued and are not affected by subsequent legislation. The Legislature has no power to divest legal or equitable rights previously vested." Coco v. Miller, 193 Ark. 999, 104 S. W. 2d 209.

In 50 Amer. Jur., p. 493, § 477, the author says: "Because every law that takes away or impairs vested rights under existing laws, is generally reprehensible, unjust, oppressive, and dangerous, such retroactive laws have not been looked upon with favor, but with disfavor, so that courts are loath to give a statute such effect. To the contrary, a prospective interpretation of statutes affecting substantive rights is favored. It is a maxim, which is said to be as ancient as the law itself, that a new law ought to be prospective, not retrospective, in its operation (nova constitutio futuris formam imponere debet, non praeteritis)."

In the instant case, petitioner came into Arkansas to transact a lawful business. He remained here either in person or by agent until his work was completed. At the time of his departure, there was no law in effect here providing for an *in personam* judgment against him on constructive service.

The act, *supra,* provided that Gillioz, by performing certain acts in this state shall be deemed to have appointed the Secretary of State as his agent upon whom service might be had. The creation of this agency, which agency did not exist at the time the act was done, was not a mere "procedural matter," but in effect contractual.

We conclude, therefore, that under the above authorities and announced rules, petitioner has been denied substantive rights and accordingly, the writ prayed must be and is granted.