Jack SWEENEY *v.* Nancy SWEENEY

79-115                                     593 S.W. 2d 21

Opinion delivered January 28, 1980
(In Banc)
[Rehearing denied February 19, 1980.]

596

*Johnson & Lewis, Ltd.,* by: *Fletcher C. Lewis,* for appellant.

*Boyett & Morgan, P.A.,* by: *James L. Morgan* and *Mike*

*Millar,* for appellee.

FRANK HOLT, Justice. Appellee was granted a divorce from appellant on her counter-claim of general indignities. She was awarded permanent alimony, attorney's fees and a statutory interest in appellant's real and personal property pursuant to Ark. Stat. Ann. §§ 34-1211 and 34-1214 (Repl. 1962). This appeal, by present counsel, is from the final decree. Appellant contends these statutes are unconstitutional.

We first consider the validity of § 34-1211, which authorizes the permanent awards made here. Before doing so, the question of appellant's standing, which appellee raises, must be resolved. To have standing to challenge the constitutionality of a statute, it must be unconstitutional as applied to the litigant. *Carter and Burkhead* v. *State,* 255 Ark. 225, 500 S.W. 2d 368 (1973). It is well established that a litigant can question the validity of a statute "when and insofar as it is being, or is about to be, applied to his disadvantage . . ." *Block* v. *Allen,* 241 Ark. 970, 411 S.W. 2d 21 (1967). Here appellant was required to pay appellee temporary maintenance and attorney's fees during the pendency of this action, which awards were made permanent by the first decree. Clearly appellant has standing to challenge the constitutionality of § 34-1211 since he was and continues to be financially obligated to the appellee under the decree rendered pursuant to this statute. By seeking a ruling from the chancellor as to its constitutionality, as applied to him, he properly raised the constitutional issue in the trial court.

In support of his argument that § 34-1211 is a gender-based classification and therefore unconstitutional, appellant relies upon *Orr* v. *Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979); and *Hatcher* v. *Hatcher,* 265 Ark. 681, 580 S.W. 2d 475 (1979). Here appellant correctly points out that in *Hatcher* we held § 34-1210, which authorizes temporary maintenance and attorney's fees for the wife, unconstitutional as being violative of equal protection rights citing *Orr.* In *Orr* Alabama statutes, similar to ours, were declared unconstitutional. We hold Ark. Stat. Ann. § 34-1211 (Repl. 1962), which is undisputedly gender-based, likewise uncon-

stitutional. We deem it appropriate to observe, however, that *Orr* and *Hatcher* were rendered subsequent to the trial of this case or during the pendency of this appeal.

Appellant next contends that § 34-1214, which pertains to a wife's property rights upon divorce, is unconstitutional, because it is also gender-based in its classification. This issue is raised for the first time on appeal and therefore we cannot consider it. *Hatcher* v. *Hatcher, supra.*

Appellant next contends that the chancery court erred in granting appellee a statutory interest in appellant's Ford Motor Company and Honeywell retirement benefits. The decree provides that appellee receive a one-third interest in the retirement benefits with Ford but does not mention the Honeywell benefits. Pension benefits which are vested but not currently due and payable are not personal property. *Knopf* v. *Knopf,* 264 Ark. 946, 576 S.W. 2d 193 (1979). Here on the record before us, it is not demonstrated that any retirement benefits are currently due and payable.

Finally, appellant contends that Act 705 of our 1979 General Assembly cannot be applied to sustain the chancellor's order. This act was enacted during the pendency of this appeal and amended §§ 34-1210, 34-1211, 34-1213, and 34-1214 by making them gender-neutral rather than gender-based. Substantive rights are clearly affected by this act and the statute cannot be retroactively applied absent clear legislative intent to that effect. *Chism* v. *Phelps,* 228 Ark. 936, 311 S.W. 2d 297 (1958). Here no emergency clause was enacted and neither is there express language regarding retroactive applicability. The act, therefore, is prospective in its application. Since the statute, § 34-1211, in effect when the chancellor's order was entered, is unconstitutional and since Act 705, subsequent to the order, is prospective in its application, no statutory law exists to apply on remand.

Even so, it has been suggested that we delineate some guidelines for the chancellors in cases now pending with respect to alimony upon rendition of the decree of divorce between the *Orr* decision and the effective date of Act 705 of 1979.

It is true that we recognized in *Hatcher* that ''[d]ivorce and the incidental rights, responsibilities and liabilities of a divorce, are purely statutory.'' At common law, there was no power to award alimony. 1 Nelson, Divorce & Annulment (2d. Ed.) 5, § 1.02, and Am. Jur. 2d, Divorce & Separation, § 534. Ark. Stat. Ann. § 34-1211 (Repl. 1962), which gives authority to the chancellor to award alimony, has been in effect for approximately 150 years. The pronouncement of *Orr* and *Hatcher,* as indicated, requires the invalidation of this statute. To meet the obvious requirements of *Orr* that this type statute be neutral and not gender-based, our legislature, within a month, enacted Act 705 of 1979. Even though our legislature acted expeditiously to correct the hiatus created by *Orr,* a void of statutory law has existed during the interim between *Orr* and the effective date of Act 705 of 1979 affecting this and perhaps numerous other cases. In this unusual situation, we think the broad power of equity should be allowed to fashion a remedy to meet the demonstrated needs of divorced spouses in order to prevent harsh and inequitable results.

In *Whitaker & Co.* v. *Sewer Improvement Dist. No. 1 of Dardanelle, Ark.,* 229 Ark. 697, 318 S.W. 2d 831 (1958), we said: ''A court of equity should be as alert to afford redress as the ingenuity of man is to cause situations to develop which call for redress.'' As further indication of the inherent powers of equity to do substantial justice between divorced parties, we said in *Conner* v. *Conner,* 192 Ark. 289, 91 S.W. 2d 260 (1936):

> Notwithstanding the fact that the wife may be the guilty spouse, the trial court, in the exercise of a sound discretion, if the facts and circumstances in the particular case warrant it, may allow her alimony, attorney's fee, and costs. This power is inherent in the court, although not provided by statute. This court said in the case of *Prior* v. *Prior,* 88 Ark. 302, 114 S.W. 700 that: 'Whether dependent upon enlarged powers conferred by the statute or not, we think it is settled that a court has the power to allow alimony to a wife against whom a decree for divorce is granted on account of her misconduct.'

In the circumstances, we hold, with respect to this and other

cases pending during this brief void of statutory law, that a chancellor may, within the exercise of inherent power and sound discretion, award alimony to the wife or husband as is justified by the facts and circumstances.

Here, as indicated, the chancellor's award of alimony cannot be sustained pursuant to § 34-1211 nor Act 705 of 1979. However, it is well recognized that we review chancery cases *de novo* on appeal and affirm when it appears correct from the record as a whole even though the chancellor has based his decision upon the wrong reason. *Morgan* v. *Downs,* 245 Ark. 328, 432 S.W. 2d 454 (1968).

Affirmed.

HICKMAN and STROUD, JJ., concur.

FOGLEMAN, C.J., and MAYS, J., concur in part and dissent in part.

DARRELL HICKMAN, Justice, concurring. The majority has reached the only result it can, unless a small number of people are to be the victims of a legal hiatus.

The United States Supreme Court in *Orr* v. *Orr,* 440 U.S. 268 (1979), held in effect that most of the alimony statutes in this country were unconstitutional. That decision would not have created too serious a problem if alimony had been a right recognized by common law. But it is not. Alimony is essentially a creature of statute. Certainly, this has always been the rule in Arkansas. If one followed a legalistic line of logic, then the appellee could be denied her right to alimony because the chancellor, after *Orr,* would have no authority to grant it. However, to deny the appellee alimony would be a greater judicially created injustice than that which some may think the majority is committing here. I think the majority is simply granting to a small number of people a right that people before them, who were members of the same class, and people after them, who are members of the same class, would have. Unless this grant is made, this small number of people will not have a right, which would be a great injustice. I do not believe the chancery courts have

the inherent power to deal with this. I think the majority is giving the courts that power, a decision in which I concur.

STROUD, J., joins in this concurrence.

JOHN A. FOGLEMAN, Chief Justice, concurring in part; dissenting in part. I agree that appellant had standing to challenge the constitutionality of Ark. Stat. Ann. § 34-1211 (Repl. 1962) and that this section of the statute is unconstitutional by the standards established in *Orr* v. *Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979). I also agree that Act 705 of 1979 is prospective in effect. I would add that it could not have been retroactive. A decree of absolute divorce was granted Mrs. Sweeney upon her counterclaim. There has been no attempt, on appeal, to obtain a reversal of that portion of the decree. It has become final; it is not affected by the decision here, and is the basis for any allowances made to her and for any award of property. Her rights were then fixed. Even if it could be argued that the rights of appellant and appellee upon entry of the divorce decree were not property rights, they were certainly substantive rights. It is well settled generally that retrospective laws are unconstitutional if they affect substantive or substantial rights. *Gillioz* v. *Kincannon,* 213 Ark. 1010, 214 S.W. 2d 212.

My point of departure from the majority opinion commences just after the statement that no statutory law exists to apply on remand. In my judgment, the opinion might well have ended there, because if no statutory law exists, no law whatever exists authorizing the allowance of alimony where the divorce is absolute. It was *only* by statute that the meaning of the word alimony was extended to include an allowance by the court on dissolving the bonds of matrimony. *Bauman* v. *Bauman,* 18 Ark. 320; *Wood* v. *Wood,* 54 Ark. 172, 15 S.W. 459.

There has never been any common law right to alimony, attorney's fees or award of property to a spouse obtaining a divorce. The matter is treated extensively in a well recognized text on the subject of divorce, and is capsuled by the writer in an early section of the text, viz:

As a result of the history of the subject, discussed in

the preceding section, the law of divorce and jurisdiction to grant absolute divorces are statutory. It has been repeated time after time, in fact, that divorce proceedings are "purely" or "entirely" statutory, and that divorce is a special statutory remedy. The power of the courts over divorce suits is derived entirely from the statutes, and is wholly dependent thereon. For example, only such judgments may be entered as are authorized by statute, and all the legislative requirements must be fulfilled to give the court jurisdiction. Not only must the statutes be strictly complied with, but they are also, usually, rather strictly construed.

1 Nelson, Divorce & Annulment (2d. Ed.) 5, § 1.02.

The matter is also explained in an annotation relating to alimony. See 34 ALR 2d 313, at p. 319, where it is stated thusly:

The matter of divorce a vinculo matrimonii is entirely statutory in origin. At common law the courts did not have the power to grant such a divorce; and even the English ecclesiastical courts could not or would not grant a divorce. And the better view is that the power to award permanent alimony in connection with a divorce a vinculo matrimonii depends on the existence of statutory authorization, and that there is no such thing as a common-law power to grant permanent alimony in connection with such a divorce. * * *

The matter of alimony is also treated at p. 658, 24 Am. Jur. 2d, Divorce & Separation, § 534, viz:

* * * But in the case of an absolute divorce terminating the matrimonial ties, the duty of support no longer exists at common law, and in the absence of a statute continuing the obligation of maintenance beyond the dissolution of the marriage, it is difficult to find a basis for awarding permanent alimony. The better view would appear to be that the right to award permanent alimony on decreeing a dissolution of the marriage can be based solely upon express statutory provision. Indeed, the

broad statement is frequently made that all authority to award alimony is referable solely to the written law, and that authority to award alimony must be conferred by statute or it does not exist.

The broad power of equity seems to have greatly expanded in the nine months following our decision in *Hatcher* v. *Hatcher,* 265 Ark. 681, 580 S.W. 2d 475. There was much greater leeway in *Hatcher,* where temporary alimony was involved, but the majority followed a very narrow and restrictive course there. The comparison is reminiscent of straining at a gnat and swallowing a camel.

In *Hatcher,* the majority, in striking down Ark. Stat. Ann. § 34-1210 (Repl. 1962), said:

The fact that the Arkansas law in question only relates to temporary, as opposed to permanent, alimony is not significant. . . . It is not a question of temporary or permanent alimony. It is a question of a gender-based classification of the statute.

Now, it makes a tremendous difference. In *Hatcher,* the majority said:

The appellee has argued that we should simply hold that the law applied to both wives and husbands. We have never applied this statute in favor of husbands. When the will of the General Assembly is clearly expressed, we are required to adhere to it without regard to consequences. *Walker* v. *Allred,* 179 Ark. 1104, 20 S.W. 2d 116 (1929). It is not the function of this court to legislate; to do so would be a clear violation of this court's authority. Divorce and the incidental rights, responsibilities and liabilities of a divorce are purely statutory. *Ex parte Helmert,* 103 Ark. 571, 147 S.W. 1143 (1912); *Ramsey* v. *Ramsey,* 259 Ark. 16, 531 S.W. 2d 28 (1975); *Wheat* v. *Wheat,* 229 Ark. 842, 318 S.W. 2d 793 (1958). We held in *Young* v. *Young,* 207 Ark. 36, 178 S.W. 2d 994 (1944):

The Legislature — not the courts — determines the

grounds for, the defenses against, divorce; because divorce is always regulated by statute.

What has changed since *Hatcher?* Now the majority says that, in spite of the fact that we said in *Hatcher* that divorce and the incidental rights, responsibilities and liabilities of a divorce are *purely* statutory, in this unusual situation, the broad power of equity should be allowed to fashion a remedy to meet the demonstrated needs of divorced *spouses* in order to prevent harsh and inequitable results.

Has it now become the function of the courts to legislate? Are divorce and the incidental rights and liabilities purely statutory - except in an unusual situation? If so, what constitutes an unusual situation? In *Hatcher,* this court declined the invitation to make the law governing temporary alimony apply to both husbands and wives. Today the court says that ''during this brief void of statutory law, a chancellor may, within the exercise of inherent power and sound discretion, award alimony to the wife or husband as is justified by the facts and circumstances.'' Why so, in the case of permanent alimony and not in the case of temporary alimony?

I am mystified by a temporary vesting of inherent power in the chancery courts. What is the source of this power? It is difficult for me to see how alimony can be converted into a matter for the exercise of equity powers for even a brief period. ''To treat a divorce suit as one in equity is historically an error, however, as a suit for absolute divorce was unknown to the common law, either in the law courts or in chancery.'' 1 Nelson, Divorce & Annulment (2d. Ed.) 8, § 1.03.

I am also troubled by our failure to deal with the question of constitutionality of Ark. Stat. Ann. § 34-1214 (Repl. 1962). Even though the question was raised for the first time on appeal, it will inevitably arise upon remand. Perhaps it is better to follow this procedure, since appellee did not address the issue of constitutionality.

I am authorized to state that Mr. Justice Mays joins in this opinion.