Annie Rose NOBLE *v.* Isom J. NOBLE, Jr.

80-177                                    605 S.W. 2d 453
Supreme Court of Arkansas
Opinion delivered October 6, 1980

*Howell & Price, P.A.*, for appellant.

*Boyett & Morgan, P.A.*, for appellee.

JOHN F. STROUD, Justice. This is an appeal from a divorce decree urging that the applicable property division

statute should be the one in effect at the time the divorce complaint was filed. We reject that contention and affirm the chancellor's application of Act 705 of 1979 as it was in effect at the time the divorce decree was granted.

Appellant and appellee were married May 30, 1978, in White County, Arkansas, and lived together intermittently until their final separation less than two months later on July 21, 1978. Appellant filed an action for separate maintenance, alleging general indignities, and after a hearing on August 31, 1978, appellee was ordered to pay her maintenance of $400 per month. On October 20, 1978, appellant amended her initial complaint to seek an absolute divorce, alleging grounds of adultery, as well as general indignities. Appellee denied the allegations of the amended complaint and filed a counterclaim for divorce on the ground of general indignities. After appellant denied the allegations of the counterclaim, appellee amended his claim to include an action for annulment on the grounds that his consent was obtained by fraud and alternatively that he was incapable of consent due to unsound mind. Appellee also sought judgment in the amount of $2,000 as reimbursement of attorney's fees incurred by him. On May 21, 1979, just two weeks after this court handed down its decision in *Hatcher* v. *Hatcher*, 265 Ark. 681, 580 S.W. 2d 475 (1979), appellee filed a motion to revoke the Temporary Order of the court previously entered ordering appellee to pay $400 per month to appellant as temporary support, pointing out that *Hatcher* declared the statute authorizing temporary maintenance to be gender-based and therefore unconstitutional. Although not reflected by the record, the briefs indicate that the court granted appellee's motion and terminated the temporary support payments several months prior to the granting of the divorce.

The decree was rendered on November 6, 1979, and the trial court ruled as follows:

(1) Appellant had proven her grounds of general indignities and adultery and was entitled to a divorce from appellee;

(2) Appellee's suit for annulment and divorce was denied and dismissed;

(3) Appellant was not entitled to dowery [dower] nor any other property belonging to appellee, nor to alimony;

(4) Appellee's prayer for recoupment of monies paid to appellant during pending of action was denied;

(5) Appellee ordered to pay $300 to appellant for medical expenses incurred by her;

(6) Appellee ordered to pay appellant's attorney reasonable attorney's fee in the amount of $2,500.

Appellant brings this appeal from the judgment of the trial court, alleging six points of error. Appellee cross-appeals from those portions of the decree requiring appellee to pay a fee to appellant's attorney and denying appellee's counterclaim against appellant for $4,000 sought by appellee as reimbursement of the 10 months of payments made by appellee to appellant as temporary support.

Appellant's first and primary contention is that Ark. Stat. Ann. § 34-1214 (Repl. 1962), the statute in effect at the time she filed the divorce action, should be applied in determining the statutory division of property. She also urges that appellee did not plead the unconstitutionality of the statute, but we reject this argument as he did allege that both the alimony and property division statutes were unconstitutional in his answer to appellant's complaint for temporary maintenance. We find that the issue was properly raised at trial without appellee repleading that issue in his answer to appellant's amended complaint seeking an absolute divorce.

When appellant amended her complaint on October 20, 1978, seeking an absolute divorce, the property division statute then in effect provided that upon the granting of a divorce to the wife she is entitled to one-third of her husband's personal property absolutely and a life estate in one-third of his real property. Thereafter, but prior to trial of this cause, *Orr* v. *Orr*, 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979), was decided by the United States Supreme Court, and *Hatcher* v. *Hatcher*, supra, was decided by this court. In *Orr*,

the Alabama statutes dealing with alimony and division of property were struck down as unconstitutional inasmuch as they were gender-based, and this court applied the same rationale in *Hatcher* to our maintenance and attorney's fees statute. Although the constitutionality of our alimony and division of property statutes was not in issue in *Hatcher*, it was obvious that they were also unconstitutional, being similarly gender-based. Therefore, the Arkansas General Assembly adopted Act 705 of 1979 which removed the gender distinctions for maintenance and attorney's fees, alimony, and division of property as well as for several other divorce related statutes Although this act did not have an emergency clause, the parties both acknowledge it had an effective date some four months prior to the trial of this cause. The new act provides that all property shall be returned to the party who owned it prior to the marriage, and only property acquired after the marriage is divided between the spouses.

Appellant argues that the retroactive application of Act 705 is a violation of her due process rights and a violtaion of Ark. Stat. Ann. § 1-104 (Repl. 1976) which provides that no action pending at the time any statutory provision is repealed shall be affected by such repeal. We hold that § 1-104 is not applicable here as the adoption of Ark. Stat. Ann. § 34-1214 (Suppl. 1979) did not repeal the prior statute, but replaced a statute already clearly void for unconstitutionality. Appellant cites *Sweeney* v. *Sweeney*, 267 Ark. 595, 593 S.W. 2d 21 (1980), as holding that Act 705 should be given prospective application only. While this is true, it applies to the date of the order and not the date the divorce complaint was filed. We said in *Sweeney*:

> Here no emergency clause was enacted and neither is there express language regarding retroactive applicability. The act, therefore, is prospective in its application. Since the statute, § 34-1211, in effect when the chancellor's *order* was entered, is unconstitutional and since Act 705, subsequent to the *order*, is prospective in its application, no statutory law exists to apply on remand. (Emphasis added.)

Appellant's next three points of error all deal with her

contention that appellee attempted to defraud her of property rights in a house purchased during the pendency of this case. Appellee apparently cashed in a life insurance policy owned by him on his son's life and used the proceeds to make a $6,000 down payment on a house conveyed to his son, with the balance of the purchase price evidenced by a loan made to his son and not guaranteed or cosigned by appellee. It is undisputed, however, that appellee has lived in the house since its purchase and has made the house payments which appellee contends are equivalent to rent. Appellee failed to disclose in his deposition that he had made the $6,000 down payment, but prior to trial his counsel advised the court of his misstatement.

Appellant contends that she has a vested dower right in the house and that due to the fraud of appellee, either a resulting trust should be recognized or a constructive trust imposed. The evidence is clear that at least appellee concealed a $6,000 gift to his son, but that fact was made known to the chancellor. The trial court made no specific finding as to the $6,000, but the decree did hold that appellant was not entitled to dower nor to any property belonging to appellee. It would be reasonable to conclude that the $6,000 reflected a change in the form of an asset, rather than being property acquired during the marriage. In view of appellee's admission prior to trial, we cannot say that the record supports a finding of fraud or that the facts justify the recognition of a resulting trust. And, clearly, there is no evidence of an oral promise by appellee's son to consider the imposition of a constructive trust. Although appellant also surmises in her brief that appellee surely has acquired other proprety subsequent to the marriage, we find no substantiation in the record on our review of the record *de novo* to find the chancellor was in error.

Appellant also urges as a point for error that if we determine that Act 705 applies to the property division in this case, the chancellor failed to apply the act properly, as the decree did not state in writing the reasons for not dividing the marital property equally. A reading of § 34-1214 in its present form clearly indicates that the requirement of the court to set forth in writing the reasons for not dividing the marital

property equally between the parties applies only "when property is divided pursuant" to the statute. In this case, the chancellor found no marital property and made no division.

Appellant's final contention is that the trial court erred in terminating her temporary support payments. The record on appeal fails to show a hearing on appellee's motion for revocation, but it does reflect that a hearing was set for August 22, 1979. Both parties acknowledge in their briefs that a hearing was held and that the court did terminate the temporary support of $400 per month. As the new statute had been in effect for over a month when the hearing was held on the motion to revoke, the court could have relied on the new act at the hearing and continued the temporary maintenance payments. Ark. Stat. Ann. § 34-1210 (Supp. 1979). It was appellant's responsibility to furnish this court with a complete record, and in the absence of a transcript or abstract of the hearing or order, we will not presume that the chancellor terminated the temporary order without realizing that the new act was in effect and applicable. The chancellor did apply this same statute less than three months later on trial of the case when appellee was ordered to pay an attorney's fee to appellant's attorney.

We find no merit in appellee's contention on cross-appeal that appellant should be required to repay the $4,000 received by her for maintenance, nor to his contention that the portion of the divorce decree directing him to pay $2,500 to appellant's attorney should be reversed. Although *Sweeney*, supra, applied only to permanent alimony, we now extend that holding to also cover temporary maintenance. The temporary maintenance payments that were made pursuant to the order of the trial court during the brief void of statutory law between the decision in *Hatcher* and the effective date of the new act are, therefore, valid. As to the attorney's fee, the new act was clearly in effect at the time the divorce decree was rendered, and the chancellor was, therefore, authorized to allow a reasonable fee to the attorney of appellant or appellee. We find no abuse of discretion in the award made.

The judgment is affirmed on appeal and cross-appeal.

FOGLEMAN, C.J., and MAYS, J., dissent in part.

HICKMAN, J., not participating.

JOHN A. FOGLEMAN, Chief Justice, dissenting in part. I dissent as to the majority's holding on temporary alimony and the holding that the house in which appellee is living is not marital property. As to the house, the only thing appellee's son has contributed is his name. If it were personal property, we could not possibly hold it to be a gift, because of the lack of delivery and retention of control by the donor. Appellee paid $6,000 as the down payment on a $69,000 purchase price. He and appellant had looked at the house and were going to buy it for their home. Appellant testified that appellee said that he had her in mind when he bought the home. His testimony and actions tend to corroborate her.

Appellee has lived in the house since the property was purchased. The son lived there not more than three weeks. This son was first employed in December, 1978. His annual salary is $11,800.

Appellee says that he meets all the payments of $490 per month and pays the utility bills and does all the repair and upkeep but would not want anything in his name. He said that his son, 23 years of age, did not have a cent "in the house," does not have a dime, and has never paid anything on the house and never would.

Insofar as the temporary "alimony," which was described as temporary *support* in the order allowing it, I concur on the basis of the view I expressed in *Hatcher* v. *Hatcher*, 265 Ark. 681, 580 S.W. 2d 475. I do not join in the extension of *Sweeney* v. *Sweeney*, 267 Ark. 595, 593 S.W. 2d 21, to apply to temporary maintenance. I am still of the view I expressed in my dissenting opinion in that case.

I am authorized to state that Mr. Justice Mays joins in this opinion.