Cora Lee HUFFMAN *v.* Jacquelinn DAWKINS
and Adonna HOLBROOKS

81-38                                          622 S.W. 2d 159

Supreme Court of Arkansas
Opinion delivered September 28, 1981
[Rehearing denied November 9, 1981.]

*Wright, Lindsey & Jennings*, and *Ray & Donovan*, for appellant.

*Haley & Young, P.A.,* by: *Jack Young*; and *Mitchell, Williams, Gill & Selig*, by: *David Allan Gates,* for appellees and cross-appellants.

DARRELL HICKMAN, Justice. Jack Hawkins died of a heart attack in Las Vegas, Nevada, on the 26th of February, 1979, at the age of sixty-two. He was there to obtain a divorce from his wife of thirty-five years. Hawkins had been the manager of Sears Department Stores in Arkansas when he retired in 1977. A will in Hawkins' handwriting was admitted to probate court in Pulaski County March 20, 1979. Hawkins had a substantial estate consisting of considerable stock in Sears, stock in First American National Bank, cash, insurance, and real estate.

The will was contested because a provision in his will left a considerable amount of his personal property to Cora Lee Huffman, who had been a fellow employee of Hawkins at Sears and with whom he was living when he died. The bequest included his vehicle, office furniture, 8,000 shares of common stock in Sears and the contents of a lock box. In the will he described Miss Huffman as his "best friend, my companion, my greatest of all loves and the individual most responsible for my life and happiness these past several years — the one I would like most to spend the rest of my life with . . ."

The will made provisions for Hawkins' wife, Katherine, leaving her their residence (it was valued at $100,000.00, held by the entirety and went to her regardless of his will), and 1,680 shares of a profit sharing plan of Sears.

To his adult daughter of his marriage to Katherine Hawkins, Adonna Holbrooks, he left 1,000 shares of an employee profit sharing plan; to his daughter from a prior marriage, Jacquelinn Dawkins, he gave 560 shares of the same stock. He also left some property to his mother.

The widow filed an election to take against the will claiming the one-third interest authorized by Ark. Stat. Ann. § 60-501 (Repl. 1971) and sought statutory allowances provided for in Ark. Stat. Ann. § 62-2501.

The two daughters contested the will on two grounds: The will was improperly executed and Hawkins lacked the proper mental capacity to make a will. The will was holographic, totally in Hawkins' handwriting. However, one person witnessed the will. It was argued that the will must fail because it was intended to be an attested will and it lacked a second witness. Also, the daughters claimed that the will was the product of two insane delusions Hawkins had: First, he was suffering from a delusion that a relationship actually existed betweeen him and Miss Huffman as he described in his will; and, second, he suffered from an insane delusion that his wife Katherine was going to kill him.

Miss Huffman challenged the right of the widow to

claim against the will or receive statutory allowances, arguing both Arkansas statutes violated the equal protection clause in the United States Constitution because rights were granted to members of the female sex with no like provisions for males.

A special master heard the testimony of many witnesses, both lay and expert, as to Hawkins' mental capacity. Considerable testimony was taken from family members, friends of the family, acquaintances and employees at Sears who had known Hawkins for years. The master concluded that the will was a valid holographic will. The fact that the will was wholly in Hawkins' handwriting and signed by him was conclusively proven by numerous witnesses and controverted by none. The master found that Hawkins had the required mental capacity to make a will as required by law and that the daughters failed to meet the law's rigid requirement of proof regarding insane delusions. He found that Miss Huffman had no standing or right to raise the constitutional issue and, therefore, denied her the right to claim that the Arkansas statutes were unconstitutional. The probate judge accepted the detailed findings and conclusions as his own in an order dated November 24, 1980.

Miss Huffman appealed raising two issues: The ruling on standing and the failure to find the will was also a valid attested will. The daughters cross-appealed arguing that the judge erred in finding that the will was validly executed and that Hawkins had the requisite capacity.

Katherine Hawkins argues in favor of the judge's ruling but advances three arguments regarding the constitutional issue. She argues that if Miss Huffman does have standing her claim should fail for three reasons: The court should not strike down the statutes but extend them to apply to males and females alike; or, if we declare the statutes unconstitutional, we should only do so prospectively; and, in any event, an act of the General Assembly, Act 714, passed on the 25th day of March, 1981, cured the defect.

We did, in fact, decide that these laws were unconstitutional in *Stokes* v. *Stokes*, 271 Ark. 300, 613 S.W. 2d 372

(1981) and *Hess* v. *Wims*, 272 Ark. 43, 613 S.W. 2d 85 (1981), but this was after this case was decided by the trial court.

We affirm the probate judge on all his findings except the issue of standing. Miss Huffman did have standing to raise the constitutional issue. The Arkansas statutes are indeed unconstitutional as we found in *Stokes* and *Hess*, and the case will be remanded for a disposition consistent with those cases and this opinion.

The cross-appellants, Dawkins and Holbrooks, do not controvert that the will was in Hawkins' handwriting and signed by him, conceding that such a will, if otherwise valid, can be admitted to probate. Ark. Stat. Ann. § 60-404 (Repl. 1971). They contend, however, that Hawkins did not intend his will to be treated as a holographic will since he made an attempt to have it witnessed. Therefore, it should be treated as an attested will. Such a will must be witnessed by at least two people who can attest that the will was indeed that of the testator and signed by him. Ark. Stat. Ann. § 60-403. Only one person, Arnold Sikes, the postmaster at North Little Rock and a friend of Hawkins', "witnessed" Hawkins' will. Sikes' signature was "notarized" before Lennie Taylor, a notary public. The case of *Walpole* v. *Lewis*, 254 Ark. 89, 492 S.W. 2d 410 (1973) is cited by the daughters as controlling but it is distinguishable. In *Walpole* a holographic will had been changed by an obliteration of a part of the will. It was critical to the decision in *Walpole* to determine whether the will was indeed an attested will or a holographic will. The probate judge found that the will of Hawkins, which had not been altered in any way, was a valid holographic will. That finding precludes any need to consider whether the will would also be a valid attested will. The law is clear that a will can satisfy both the requirements for a holographic and an attested will. *Walpole* v. *Lewis, supra.*

Hawkins was found to have the necessary mental capacity to make a will and it was found that the cross-appellants failed to meet the burden of proving the two claimed insane delusions. In order to reverse that finding we would have to find the judge was clearly wrong. Rules of

Civ. Proc., Rule 52. On this record we cannot reverse that finding.

An insane delusion was defined in *Taylor* v. *McClintock*, 87 Ark. 243 (1908) as:

> Where one conceives something extravagant, and believes it as a fact, when in reality it has no existence, but is purely a product of the imagination, and where such belief is so persistent and permanent that the one who entertains it cannot be convinced by any evidence or argument to the contrary, such a person is possessed by an insane delusion.

Such a delusion must not only exist but the will must be a product of the delusion. *Dumas* v. *Dumas*, 261 Ark. 178, 547 S.W. 2d 417 (1977); *Kelley* v. *Reed*, 265 Ark. 581, 580 S.W. 2d 682 (1979). If there is *any* basis in fact for the delusion, or if it is not proved that the will was a product of the delusion, such a delusion will not warrant setting aside a legal document. *Taylor* v. *McClintock, supra; Kelley* v. *Reed, supra; Dumas* v. *Dumas, supra.*

Hawkins was a very successful businessman, respected in the community and at Sears. He started out at the bottom and rose to the top of his profession. Numerous witnesses testified as to his mental stability, including his personal physician, Dr. Gordon Holt.

His marriage had not been stable. He had twice sought a divorce, once in 1972 and again in 1978. He withdrew his first suit and reconciled with his wife. His second petition for divorce was denied for lack of grounds. He was in Las Vegas seeking a divorce when he died.

His wife testified that he changed after his heart attack in 1971, became insecure at work and developed mental problems thereafter. He and his wife sought help from a clinical psychologist after the separation in 1971. She denied that she threatened to kill him. Hawkins, of course, could not testify but his deposition from his Arkansas divorce case was admitted. In that testimony he said his wife had over the

years consistently accused him of affairs with employees at Sears and had indeed, said she would kill him. Whether his belief she would kill him was well-founded was certainly controverted, but he said he had some basis for that belief.

Hawkins' relationship with Miss Huffman may not have been as he described in his will which was dated August 31, 1977. Miss Huffman denied they ever had sexual intercourse or even "dated" before he made his will. She said they had mutual respect for each other as fellow employees and after he retired in 1977, they had lunch together once, and twice went to a park during the daytime.

Did he have an insane delusion about their relationship and the death threat? The test is whether there was *any* basis for Mr. Hawkins' beliefs. It is the burden of one proposing to set aside a will because of an insane delusion to prove it by a preponderance of the evidence. *Dumas* v. *Dumas, supra.* The judge found the evidence short in this regard and we cannot overrule that finding. The testimony of Hawkins' doctor and an expert clinical psychologist was in conflict. The clinical psychologist, assuming certain facts, testified that Hawkins did suffer from the two insane delusions. It was the role of the probate court to resolve the conflicts. *Dumas* v. *Dumas, supra.* Having found the cross-appellants failed to meet their burden of proof, we cannot clearly say the probate court was wrong.

The court was wrong, however, on the issue of standing. Miss Huffman, a devisee and benefciary of Hawkins' will, did stand to lose financially, and in fact did so when the wife was allowed to take against the will. In companion cases we found standing to challenge the constitutionality of these very statutes in those who would stand to lose a financial interest. *Stokes* v. *Stokes, supra; Hess* v. *Wims, supra.* It is argued that those decisions are distinguishable because heirs, not strangers, raised the issue. Those decisions were made without any such limitation. The key was whether the party would lose financially unless the issue was raised. Miss Huffman satisfies that requirement.

In *Stokes* and *Hess* we intentionally made no limitation

on whether the application of our decision would be retrospective or prospective. We have generally held that when a statute is declared unconstitutional it must be treated as if it had never been passed. *Morgan* v. *Cook*, 211 Ark. 755, 202 S.W. 2d 355 (1947); *State* v. *Williams-Echols Dry Goods Co.*, 176 Ark. 324, 3 S.W. 2d 340 (1928); *Cochran* v. *Cobb*, 43 Ark. 180 (1884). That is the standard in dealing with the effect of unconstitutional laws, with few exceptions.

We must treat the parties in this case the same as we did in *Stokes* and *Hess*. Miss Huffman timely raised the constitutional issue and was entitled to a ruling.

Act 714 of 1981 was passed to cure the defects in the Arkansas dower laws and related statutes, and it cannot be applied retroactively to remedy the problems created by those unconstitutional statutes. That is the case because the act deals with a matter of substantive rather than procedural law. In *Lucas* v. *Handcock*, 266 Ark. 142, 583 S.W. 2d 491 (1979), we set forth the law regarding retroactive application of such laws. It is presumed such legislation will not be retroactively applied. *Snuggs* v. *Board of Trustees of Ark. State Employees Retirement System*, 241 Ark. 402, 407 S.W. 2d 933 (1966).

Affirmed in part, reversed and remanded in part.

HAYS, J., not participating.