COUNTY MARKET and Silvey Companies *v.* Willie
THORNTON

CA 88-220                                    770 S.W.2d 156

Court of Appeals of Arkansas
Division II
Opinion delivered ⁻May 3, 1989
[Supplemental Opinion on Denial of Rehearing
June 21, 1989.*]

*Rogers, J. dissents.

*Matthews, Sanders, Liles & Sayes*, by: *Marci Talbot Liles*, for appellants.

*Haskins Law Firm*, for appellee.

JAMES R. COOPER, Judge. The appellee in this workers' compensation case was injured on January 24, 1984, within the scope of his employment as a stocker for his employer, the appellant County Market. The employer sent him to a doctor, who referred him to Dr. Blackwell, an orthopedic surgeon, for treatment. On April 4, 1984, Dr. Blackwell recommended that the appellee return to work. The appellee returned to work on April 9, 1984, but shortly thereafter filed notice that he was changing physicians to a chiropractor, Dr. Barbaree. Dr. Barbaree treated the appellant and subsequently referred him to Dr. Saer, who performed an orthopedic examination. The appellants refused to pay for the chiropractic treatments or the referral to Dr. Saer, alleging that the treatment provided by Dr. Barbaree was unauthorized and unnecessary, and that the provision of Act 444 of 1983 (codified at Ark. Code Ann. § 11-9-514 (1987)) permitting change to a chiropractic physician without approval by the Commission was unconstitutional. The administrative law judge found Act 444 of 1983 to be constitutional. The Commission, on review, likewise found the Act to be constitutional, but

remanded the case to the administrative law judge to determine whether the change of physicians and resulting treatment were reasonable and necessary. The appellants then brought an appeal to this Court challenging the Commission's conclusion that Act 444 of 1983 is constitutional. In an opinion not designated for publication, we dismissed the appeal for lack of an appealable order. *County Market* v. *Thornton*, No. CA85-494 (May 28, 1986). On remand, the administrative law judge found the services of Dr. Barbaree and Dr. Saer to be causally related to the injury, reasonable, and necessary, and again held the Act to be constitutional. These findings and conclusions by the administrative law judge were adopted by the Commission in an opinion filed on May 9, 1988. From that decision, comes this appeal.

The appellants do not contend that the Commission erred in finding the controverted treatment to be causally related, reasonable, and necessary, but instead assert that Ark. Code Ann. § 11-9-514 (1987) is unconstitutional as special and local legislation; that § 11-9-514 violates the equal protection clauses of the United States and Arkansas constitutions; and that § 11-9-514 is void for vagueness. On cross-appeal, the appellee contends that the Commission erred in finding that he was not entitled to additional temporary total disability benefits.

We first address the threshold issue of the appellants' standing to challenge the constitutionality of Ark. Code Ann. §11-9-514, which in pertinent part provides that:

(a)(1) If the employee selects a physician, the commission shall not authorize a change of physician unless the employee first establishes to the satisfaction of the commission that there is a compelling reason or circumstance justifying a change.

(2) If the employer selects a physician, the claimant may petition the commission one (1) time only for a change of physician, and if the commission approves the change, with or without a hearing, the commission shall determine the second physician and shall not be bound by recommendations of claimant or respondent. However, if the change desired *by the claimant is to a chiropractic physician, the claimant may make the change by giving advance notice to the employer or carrier.*

(b) Treatment or services furnished or prescribed by any physician other than the ones selected according to the foregoing, except emergency treatment, shall be at the claimant's expense.

(Emphasis supplied.) The statute in question draws a distinction between chiropractic physicians and other physicians, making it simpler for a claimant to effect a change of physicians when the desired change is to a chiropractor. Both before the Commission and on appeal, the appellants have contended that statute is invalid as an impermissible distinction between chiropractors and other physicians. We do not reach the constitutional issues, however, because the appellants — a retail store and insurance company — lack standing to raise such issues.

> Constitutional rights, including the guarantee of due process, are personal rights and may not be asserted by a third party. *Broadrick* v. *Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), and *Barrows* v. *Jackson*, 346 U.S. 249, 73 S. Ct. 1031, 97 L. Ed. 1586 (1953). A very narrow exception exists where the issue presented to the court would not otherwise be susceptible of judicial review and it appears that the third party is sufficiently interested in the outcome that the rights of the other party would be vigorously asserted and, thus, adequately represented.

*Cox* v. *Stayton*, 273 Ark. 298, 619 S.W.2d 617, 619 (1981). The *Cox* Court agreed that the appellant grandparents had standing to raise the question of their grandchildren's right to counsel in an adoption proceeding because the issue would not otherwise be susceptible to review, but held that they lacked standing to assert the parents' right to counsel because that right could be asserted by the parents themselves, and would easily be reviewable had the parents joined in the appeal to claim such a right. *Id.*, 619 S.W.2d at 619-20. Clearly, physicians other than chiropractors are capable of asserting that the "chiropractic preference" provision of § 11-9-514 violates their constitutional rights, either by joining in the present litigation or bringing an action in their own behalf, and the issue is therefore readily susceptible of judicial review outside the context of the case at bar.

■ Moreover, the appellants have failed to show they

suffered an injury as a result of the alleged unconstitutionality of the Act, as required by *Stokes* v. *Stokes*, 271 Ark. 300, 613 S.W.2d 372 (1981). The injury must be concrete, specific, real, and immediate rather than conjectural or hypothetical. *Estes* v. *Walters*, 269 Ark. 891, 601 S.W.2d 252 (Ark. App. 1980).

Although there are cases in which financial injury has been sufficient to give standing to assert the rights of another, those cases are distinguishable because the financial injuries they involved were immediate and directly tied to the challenged statute. In *Stokes* v. *Stokes*, 271 Ark. 300, 613 S.W.2d 372 (1981), standing was based on a finding that the child heirs-at-law had a direct monetary interest in the outcome of the lawsuit because the estate would be substantially reduced if the widow took against the will. On the basis of this threat of "immediate monetary loss," the *Stokes* Court held that the children had standing to challenge the statute which permitted the widow to elect to take against the will. A similar threat based on the same election statute was the basis for standing in *Huffman* v. *Dawkins*, 273 Ark. 520, 622 S.W.2d 159 (1981). In *Sweeney* v. *Sweeney*, 267 Ark. 595, 593 S.W.2d 21 (1980), a husband was found to have standing to challenge the constitutionality of a statute authorizing awards of permanent maintenance where he was obligated to make such payments under a decree rendered pursuant to the challenged statute. In all of these cases, the causal relationship between the threatened financial loss and the challenged statute is clear, direct, and immediate. In *Stokes* and *Huffman*, there would be no threat of loss *but for* the election statute allowing widows to take against the will; in *Sweeney*, the threatened loss was an award based on the challenged statute.

In the case at bar, however, the award is not based on the challenged statute, which is procedural, but is instead based on Ark. Code Ann. § 11-9-508 (1987), which imposes liability for reasonably necessary medical expenses. The appellants do not contest the validity of this statute or the Commission's findings that the expenses incurred were reasonable and necessary. Instead, they argue that the rule requiring Commission approval of physician changes in § 11-9-514(a)(1) serves to filter out frivolous and non-meritorious claims and that, but for the statutory provision removing chiropractors from the rule, the Commission might have disapproved the change, in which case §

11-9-514(b) would have exempted the appellants from liability.

■    This theory of injury requires us to assume that Commission approval of the change of physician, an essentially discretionary act in this case under § 11-9-514(a)(2), would have been withheld. This assumption would be purely speculative on our part because the Commission did not find the medical expenses arising from the physician change to be frivolous or non-meritorious, but instead found them to be reasonable and necessary, a finding not challenged on appeal. Under these circumstances, the appellants' theory of injury is conjectural, hypothetical, and lacking in immediacy. We hold that the appellants lack standing in this case to challenge the exemption of chiropractors from the approval requirements governing change of physicians in § 11-9-514, and we therefore do not address the constitutional arguments they advance.

Finally, it is worth noting that the standing requirements limiting the assertion of constitutional rights by a third party are not merely intended to prevent unnecessary pronouncement on constitutional issues and premature interpretation of statutes: they also have the function of insuring that the issues on appeal will be concrete and sharply presented. *Secretary of State of Maryland* v. *Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 (1984). The case at bar involves a statute drawing distinctions between physicians and chiropractors, and evidence regarding the differences in training and practice between these health-care professionals will be crucial in determining whether the statutory distinction is founded on a rational basis. However, no such evidence is of record because no health-care professionals are parties. These issues would be more focused and more capable of resolution if we were presented with evidence bearing on the statutory distinction, and our holding that the appellants lack standing to assert these constitutional issues is therefore in keeping with the purpose and underlying reasoning behind the rules governing standing.

■    On cross-appeal, the appellee contends that the Commission erred in finding that he was not entitled to temporary total disability benefits for a period beginning on April 10, 1984. He argues that there is no substantial evidence to support a finding that his healing period ended on April 10, 1984, and that

the denial of temporary total disability benefits subsequent to that date was thus erroneous. We disagree. Temporary total disability benefits do not, in all cases, correspond to the healing period. *Arkansas State Highway and Transportation Dep't* v. *Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). In cases controlled by Ark. Code Ann. § 11-9-519 (1987) (formerly codified at Ark. Stat. Ann. § 81-1313 (Repl. 1976)), such as the case at bar, temporary total disability is not based on the claimant's healing period, but is instead awarded where the claimant is incapacitated because of injury to earn the wages he was receiving at the time of the injury. *Breshears, supra; see* Ark. Code Ann. § 11-9-102(5) (1987). Therefore, the issue for us to determine is whether the evidence supports a finding that the appellee was not incapacitated, subsequent to April 10, 1984, to earn the wages he was receiving when injured.

In workers' compensation cases, we review the evidence in the light most favorable to the Commission's findings and affirm if those findings are supported by substantial evidence. *Basford* v. *Weyerhaeuser Co.*, 21 Ark. App. 223, 730 S.W.2d 916 (1987). We may reverse the Commission's findings only when we are convinced that fair-minded people, with the same facts before them, could not have arrived at the conclusion reached by the Commission. *DeBoard* v. *Colson Co.*, 20 Ark. App. 166, 725 S.W.2d 857 (1987). Here there was evidence that Dr. Blackwell released the appellee to return to work on April 4, 1984. The appellee did return to work for a few days, but saw Dr. Blackwell again on April 11 and reported that he experienced increased pain after working. Dr. Blackwell again recommended that the appellee continue performing normal activities. Although the appellee continued to be treated for his injuries for some time, we note that none of the physicians' reports conclude that the appellee suffered a temporary total disability after April 10, 1984. We think that the Commission could fairly conclude that, although the appellee had not completely healed after that date, he was nevertheless not incapacitated, and we hold that the Commission did not err in denying the claim for additional temporary total disability benefits.

Affirmed on appeal and cross-appeal.

CORBIN, C.J., and ROGERS, J., agree.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
JUNE 21, 1989

771 S.W.2d 793

PER CURIAM. Petition for rehearing is denied.

ROGERS, J., dissents.

JUDITH ROGERS, Judge, dissenting. The petitioners have filed a timely Petition for Rehearing asking this court to reconsider the position taken by the court that they have no standing to challenge the constitutionality of the provision in Ark. Code Ann. § 11-9-514(a)(2) (1987). This statute provides that a change of physician to a chiropractor need only be preceded by advance written notice, as opposed to the situation where Commission authorization is required on a finding of a compelling reason to justify changing from one physician to another. I find their arguments persuasive, and in my view petitioners do have standing to raise this issue; therefore, I would grant their petition, and ultimately reach the question presented, which at first blush, seems to have merit.

As noted by the court in its opinion, one who possesses a financial interest can be accorded standing to challenge the constitutionality of a statute. See *Stokes v. Stokes*, 271 Ark. 300, 613 S.W.2d 372 (1981); *Huffman v. Dawkins*, 273 Ark. 520, 622 S.W.2d 159 (1981); *Sweeney v. Sweeney*, 267 Ark. 595, 593 S.W.2d 21 (1980). In the opinion, these cited cases were discussed, and yet distinguished on the basis that the "award" in this case was not made pursuant to the challenged statute, but pursuant to Ark. Code Ann. § 11-9-508(a) (1987) upon a finding that the chiropractic treatment was "reasonable necessary." This distinction, while technically correct, ignores the fact that the initial change to a chiropractor which was contested gave rise to the petitioner's liability under § 11-9-508(a). Thus, it is illogical for this distinction to be made controlling when there is a discernible nexus between the two statutes, and it effectively insulates this provision from judicial review.

More importantly, however, this decision sweeps too broadly in its holding that the petitioners alone, without the intervention of a physician, would not in any event have standing to test the constitutionality of this provision. The petitioners are interested

parties in that the whole scheme of workers' compensation law rests upon the responsibility of employers to compensate their employees for job-related injuries. The petitioners' financial obligations, as envisioned by the statutory scheme, should give them standing to raise this issue. The petitioners' "injury" in this case is evident not only from this standpoint, but also from the fact that the respondent did take advantage of this provision resulting in the petitioners having to pay for the treatment after having to litigate this change in the first place. To say otherwise, places the petitioners and those similarly situated in the untenable position of having to pay for the treatment without question or engage in costly litigation. I would grant the petition.